ELECTRONICALLY FILED

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>ENRON CORP., et. al.,<br><br><br>Debtors. | District Court<br>Case No. 05-CV-2710 (RCC)<br><br>**ORAL ARGUMENT<br>REQUESTED** |
| ENRON POWER MARKETING, INC.<br><br>Plaintiff- Appellee,<br>- against –<br><br>PUBLIC UTILITY DISTRICT NO. 1 OF SNOHOMISH<br>COUNTY,<br><br>Defendant-Appellant. | Bankruptcy Court<br>Case No. 01-16034 (AJG)<br>Chapter 11<br>Jointly Administered<br><br>Adv. Proc. No. 03-2064 (AJG) |

## BRIEF OF APPELLEE

Jonathan D. Polkes, Esq.
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
(212) 310-8000

Israel Dahan, Esq.
CADWALADER, WICKERSHAM & TAFT LLP
One World Financial Center
New York, NY 10281
(212) 504-6000

Mark C. Ellenberg, Esq.
CADWALADER, WICKERSHAM & TAFT LLP
1201 F Street, NW
Washington, DC 20004
(202) 862-2200

*Attorneys for Plaintiff-Appellee*

## TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ................................................................. ii

STATEMENT OF THE ISSUES PRESENTED................................... 1

STANDARD OF REVIEW .................................................................. 1

PRELIMINARY STATEMENT ........................................................... 1

STATEMENT OF FACTS ................................................................... 6

    A.    EPMI's Action Against Snohomish In The Bankruptcy Court .................... 6

    B.    Snohomish's Request For Clarification From FERC .................................. 7

    C.    EPMI's Motion To Enforce The Automatic Stay And The Bankruptcy Court's Decision And Order ............................................................. 8

    D.    FERC's March 11, 2005 Clarification Order ................................................ 10

ARGUMENT...................................................................................... 11

I.    THIS COURT LACKS JURISDICTION TO ENTERTAIN AN APPEAL BY SNOHOMISH FROM A JUDGMENT ISSUED IN ITS FAVOR.......................... 11

II.    THE BANKRUPTCY COURT'S ORDER RESTRICTING FERC FROM DECIDING THE PARTIES' CONTRACTUAL RIGHTS UNDER THE AGREEMENT IS CONSISTENT WITH THE LAW AND THE POWERS GRANTED TO THE COURT BY CONGRESS ....................................................... 15

    A.    The Bankruptcy Court Has Exclusive Jurisdiction Over Issues That Involve The Property And Administration Of The Enron Estate .................. 16

    B.    The Bankruptcy Court, And Not FERC, Has Jurisdiction Over The State-Law Contract Issues Impacting The Property Of The Enron Estate In The Adversary Proceeding ..................................................................... 19

    C.    The Bankruptcy Court Always Has The Power To Interpret And Apply The Automatic Stay ..................................................................................... 21

CONCLUSION..................................................................................... 25

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES:

American Coal Co. v. Enron N. Am. Corp. (In re Enron Corp.),
    No. 03 Civ. 1727 LTS, hearing transcript/oral decision & order
    (S.D.N.Y. June 25, 2003) (Swain, J.), certif. denied, No. 03 Civ. 1727 LTS,
    2003 WL 22481030 (S.D.N.Y. Nov. 4, 2003) (Swain, J.),
    writ of mandamus denied, No. 03-3121, slip op. (2d Cir. June 23, 2004) ................  20-21

Arthur Treacher's Fish & Chips, Inc. v. A & B Mgmt. Corp.
    (In re Arthur Treacher's Franchisee Litig.),
    689 F.2d 1137 (3d Cir. 1982) ...................................................................  13

Balcom v. Lynn Ladder & Scaffolding Co.,
    806 F.2d 1127 (1st Cir. 1986)...................................................................  13

Bath Iron Works Corp. v. Coulombe,
    888 F.2d 179 (1st Cir. 1989)....................................................................  13

Board of Cty. Comm'rs of Archuleta v. Fairfield Communities, Inc.,
    122 B.R. 128 (D. Colo. 1990)...................................................................  18

Board of Gov'rs of Fed. Reserve Sys. v. MCorp Fin., Inc.,
    502 U.S. 32 (1991)................................................................................  23, 24

Chao v. Hospital Staffing Servs., Inc.,
    270 F.3d 374 (6th Cir. 2002) ...................................................................  23

Cohen v. Drexel Burnham Lambert Grp., Inc.
    (In re Drexel Burnham Lambert Grp., Inc.),
    138 B.R. 687 (Bankr. S.D.N.Y. 1992) (Conrad, J.)...................................  17

Contractors' State License Bd. of Cal. v. Dunbar (In re Dunbar),
    245 F.3d 1058 (9th Cir. 2001) .................................................................  23

Corporacion de Servicios Medicos Hospitalarios de Fajardo v. Mora
    (In re Corporacion de Servicios Medicos Hospitalarios de Fajardo),
    805 F.2d 440 (1st Cir. 1986)....................................................................  17

County of Morris v. Nationalist Movement,
    273 F.3d 527 (3d Cir. 2001) ....................................................................  15

Deposit Guar. Nat'l Bank, Jackson, Miss. v. Roper,
    445 U.S. 326 (1980)................................................................................  12

**PAGE(S)**

El Paso Natural Gas Co. v. Kaneb Energy Co.,
Docket No. GP90-15-000, 1991 WL 265381 (FERC May 8, 1991) .......................... 20

Electrical Fittings Corp. v. Thomas & Betts Co.,
307 U.S. 241 (1939)......................................................................................... 12-13

Enron Corp. v. California (In re Enron Corp.),
314 B.R. 524 (Bankr. S.D.N.Y. 2004) (Gonzalez, J.) ................................. 18, 22

Enron Power Mktg., Inc. v. California Power Exch. Corp. (In re Enron Corp.),
No. 04 Civ. 8177, 2004 WL 2711101 (S.D.N.Y. Nov. 23, 2004) (Casey, J.)........... 21

Enron Power Mktg., Inc. v. City of Santa Clara (In re Enron Power Mktg., Inc.),
No. 01 Civ. 7964, 2003 WL 68036 (S.D.N.Y. Jan. 8, 2003) (Baer, J.) ..................... 21

Enron Power Mktg, Inc. v. Luzenac Am., Inc. (In re Enron Corp.),
No. 03 Civ. 1524, slip op. (S.D.N.Y. Mar. 25, 2004) (Preska, J.) .............................. 20

In re Adelphia Comms. Corp.,
298 B.R. 49 (S.D.N.Y. 2003) (Baer, J.)........................................................ 13-14

In re Amoco Prod. Co.,
Docket No. GP87-47-000, 1998 WL 244437 (FERC May 6, 1988) .......................... 20

In re El Paso Elec. Co.,
Docket Nos. EL03-113-007, -180-007, EL02-154-004, 2005 WL 568526
(FERC Mar. 11, 2005) ................................................................... 10-11, 15

In re Enron Corp.,
300 B.R. 201 (Bankr. S.D.N.Y. 2003) (Gonzalez J.) ................................. 16

In re FCC,
217 F.3d 125 (2d Cir.), cert. denied sub nom., 531 U.S. 1029 (2000) ....................... 24

In re Louisiana Natural Gas Pipeline Inc.,
Docket No. RP93-91-000, 1993 WL 453120 (FERC Nov. 4, 1993).......................... 20

In re Portland Gen. Elec. Co.,
Docket No. EL94-92-000, 1995 WL 394547 (FERC July 5, 1995) .......................... 19-20

In re PPL Elec. Utils. Corp.,
Docket No. ER00-2689-000, 2000 WL 1100277 (FERC July 26, 2000).................. 19

In re PPL Montana LLC,
Docket No. ER01-2633-000, 2001 WL 1076596 (FERC Sept. 14, 2001) ................ 19

**PAGE(S)**

In re Public Serv. Co. of N.H.,
    898 F.2d 1 (1st Cir 1990) ............................................................................ 13

In re Southern Cal. Edison Co.,
    Docket No. EL98-34-000, 1998 WL 683334 (FERC Oct. 2, 1998) ........................... 19

Johnson v. Hous. Auth. of Pitt.,
    52 Fed. Appx. 589 (3d Cir. 2002) ................................................................. 14

Kansas Gas Serv. v. Enbridge Pipelines KPC,
    Docket No. RP02-143-000, 2002 WL 471197 (FERC Mar. 28, 2002) ..................... 19

Keene Corp. v. Acstar Ins. Co. (In re Keene Corp.),
    162 B.R. 935 (Bankr. S.D.N.Y. 1994) (Bernstein, J.) ................................... 16

Loewi Realty Corp. v. Chanticleer Assocs., Ltd. (In re Chanticleer Assocs., Ltd.),
    592 F.2d 70 (2d Cir. 1979) ......................................................................... 22

LTV Corp. v. Aetna Cas. & Sur. Co. (In re Chateaugay Corp.),
    116 B.R. 887 (Bankr. S.D.N.Y. 1990) (Lifland, J.)...................................... 17

LTV Steel Co. v. Board of Educ. of Cleveland City Sch. Dist.
    (In re Chateaugay Corp.),
    93 B.R. 26 (S.D.N.Y. 1988) (Leval, J.) ....................................................... 22

McDonald v. Master Fin., Inc. (In re McDonald),
    205 F.3d 606 (3d Cir.), cert. denied, 531 U.S. 822 (2000) ......................... 14-15

Mirant Corp. v. Potomac Elec. Power Co. (In re Mirant Corp.),
    378 F.3d 571 (5th Cir. 2004) ............................................................ 19, 22, 23

Momentum Mfg. Corp. v. Employee Creditors Committee
    (In re Momentum Mfg. Corp.),
    25 F.3d 1132 (2d Cir. 1994) ....................................................................... 17

Mumford Cove Ass'n, Inc. v. Town of Groton, Conn.,
    647 F. Supp. 671 (D. Conn. 1986)............................................................... 23

Northern Cal. Power Agency v. Pacific Gas & Elec. Co.
    (In re Pacific Gas & Elec. Co.),
    Docket Nos. ER01-2998-000, ER02-358-000, EL02-64-000,
    2002 WL 398318 (FERC Mar. 14, 2002) ..................................................... 18

Official Comm. of Unsecured Creditors v. PSS S.S. Co. (In re Prudential Lines Inc.),
    928 F.2d 565 (2d Cir.), cert. denied, 502 U.S. 821 (1991) ......................... 17

iv

**PAGE(S)**

Petrusch v. Teamsters Local 317 (In re Petrusch),
    667 F.2d 297 (2d Cir. 1981), cert. denied, 456 U.S. 974 (1982) .............................. 16

Phillips Beverage Co. v. Belvedere, S.A.,
    204 F.3d 805 (8th Cir. 2000) .................................................................... 23

Public Serv. Co. of Colo. v. United States EPA,
    225 F.3d 1144 (10th Cir. 2000) ................................................................. 15

RJE Corp. v. Northville Indus. Corp.,
    329 F.3d 310 (2d Cir. 2003) ..................................................................... 13-14

Shugrue v. Air Line Pilots Ass'n, Int'l (In re Ionosphere Clubs, Inc.),
    922 F.2d 984 (2d Cir. 1990), cert. denied, 502 U.S. 808 (1991) .............................. 1, 16, 22

Spencer v. Casavilla,
    44 F.3d 74 (2d Cir. 1994) ....................................................................... 13

United States v. Good Samaritan Church,
    29 F.3d 487 (9th Cir. 1994) ..................................................................... 13

University Med. Ctr. v. Sullivan (In re University Med. Ctr.),
    973 F.2d 1065 (3d Cir. 1992) ................................................................... 18

**STATUTES & OTHER AUTHORITIES:**

11 U.S.C.:
    § 362(a)(3) .................................................................................... 16
    § 541(a)(1) .................................................................................... 17
    § 541(a)(7) .................................................................................... 17

28 U.S.C. § 1334(a) ..................................................................................... 22

Appellee Enron Power Marketing, Inc. ("EPMI" or "Enron") respectfully submits this brief in opposition to the appeal of Public Utility District No. 1 of Snohomish County ("Snohomish") from the January 14, 2005 Order issued by the Honorable Arthur J. Gonzalez of the United States Bankruptcy Court for the Southern District of New York (the "Order").[1]  A. 305-06.

## STATEMENT OF THE ISSUES PRESENTED

1.    Whether jurisdiction exists in this Court to hear an appeal by Snohomish from the Order given that such Order was issued in Snohomish's favor and Snohomish is only seeking to eradicate from the Order the Bankruptcy Court's reasoning and certain language that it does not like?

2    Whether the Order, which stated that any decision by FERC with respect to the terms of the Agreement and the parties' contractual rights thereunder would be void *ab initio*, was consistent with the Bankruptcy Court's exclusive jurisdiction over issues affecting the property and administration of a debtor's estate?

## STANDARD OF REVIEW

The standard of review on this appeal is *de novo*, as the issues raised concern purported errors of law.  See Shugrue v. Air Line Pilots Ass'n, Int'l (In re Ionosphere Clubs, Inc.), 922 F.2d 984, 988-89 (2d Cir. 1990), cert. denied, 502 U.S. 808 (1991).

## PRELIMINARY STATEMENT

Snohomish has filed an appeal from a Bankruptcy Court decision that it won.  Not content with its win, Snohomish wants this Court to change the nature and extent of its win by rewriting and eradicating certain language from the Bankruptcy Court's decision that does meet with its approval.  In particular, Snohomish dislikes certain language in the decision used by the Bankruptcy Court to explain its ruling and wishes to have that language excised by this Court.

---

[1]    Citations to pages of the Appellant's appendix are referenced herein as "A. __."

Snohomish wants this language removed so that it can persuade the Federal Energy Regulatory Commission (the "FERC") in parallel litigation undertaken by Snohomish at FERC to take actions that would improperly infringe on the Bankruptcy Court's jurisdiction. Snohomish's appeal is an improper use of the appellate function. Accordingly, Snohomish's appeal should be dismissed for want of jurisdiction and the relief it seeks should be denied in its entirety.

More than two years ago, EPMI filed an adversary proceeding in the Bankruptcy Court (the "Adversary Proceeding") seeking to collect a more than $116 million Termination Payment owed by Snohomish under a Master Power Purchase and Sale Agreement (the "Agreement") entered into between the parties on or about January 26, 2001. The Termination Payment constitutes property belonging exclusively to Enron's estate. Pursuant to an order by the Bankruptcy Court, the Adversary Proceeding, along with numerous other similar trading contract cases filed by Enron, have been sent to mediation before United States Bankruptcy Judge Allan L. Gropper.

On August 4, 2004, without asking the Bankruptcy Court to lift the automatic stay or to modify its mediation order, Snohomish filed a motion with FERC asking it to determine that EPMI should not be entitled to collect from Snohomish the Termination Payments sought in the Adversary Proceeding. While the motion was denominated a "Request for Clarification," it was, in fact, a transparent exercise of forum shopping by Snohomish. In particular, Snohomish wanted FERC to decide the very same contractual issue that had been before the Bankruptcy Court for over two years and had been the subject of the court-ordered mediation for more than one year.

In response to Snohomish's "Clarification" motion, EPMI moved the Bankruptcy Court for an Order enforcing the automatic stay and compelling Snohomish to immediately withdraw its Request for Clarification from FERC. In its motion, EPMI contended that the Request for Clarification violated the automatic stay, because the Bankruptcy Court, and not

FERC, has jurisdiction over state-law contract issues, especially those that concerns the administration and property of the estate. Snohomish, however, asserted that the Request for Clarification did not violate the automatic stay, because it was merely asking FERC to exercise its exclusive jurisdiction over regulatory issues and FERC was protected by the "governmental unit" exception to the automatic stay. Thus, the central question facing the Bankruptcy Court was the scope of relief sought by Snohomish in its Request for Clarification – was it merely a request to have FERC exercise its regulatory powers or a request to have FERC decide state-law contractual issues involving the property of the Enron estate.

On December 21, 2004, the Bankruptcy Court announced its decision on EPMI's motion on the record in open court. The Bankruptcy Court concluded that "[t]he record is unclear as to precisely what Snohomish is requesting of FERC." A. 306. In this regard, the Bankruptcy Court found that it was uncertain whether Snohomish was seeking to merely have FERC exercise its legitimate regulatory powers or to make decisions concerning state-law contract issues that are within the jurisdiction of the Bankruptcy Court. Therefore, the Bankruptcy Court denied EPMI's motion concerning Snohomish's violation of the automatic stay as premature, but stated that 'to the extent that the FERC Proceeding would exceed FERC's authority in exercising its police and regulatory function concerning correcting market abuse and if FERC were to actually undertake to interpret the terms of the contract, any such action would be void *ab initio* absent relief from the automatic stay." A. 302. The Bankruptcy Court also concluded that were FERC to order disgorgement related to the Termination Payment, it would be within the Bankruptcy Court's exclusive province to determine how a disgorgement order would impact on the adversary proceeding or be treated for purposes of distribution under Enron's reorganization plan.

On January 14, 2005, the Bankruptcy Court issued a two-page Order (the "Order") formalizing its December 21, 2004 decision. In the Order, Judge Gonzalez reiterated that "it is

unclear precisely what relief Snohomish seeks from FERC in its Request for Clarification." A. 306. Accordingly, the Order provides that the motion is denied "in essence, as premature as it could not be determined if [EPMI's requested] relief were necessary; however, to the extent that FERC were to undertake to interpret the terms of the Agreement or to determine the rights of the parties under the terms of the Agreement, any such action would be void *ab initio*." A. 306.

Not content with the fact that the Bankruptcy Court had denied Enron's motion and did not order Snohomish to withdraw its Request for Clarification, Snohomish filed this appeal. Snohomish's principal argument is that the Bankruptcy Court erred in including in its Order an "advisory opinion" on issues that allegedly were neither ripe nor addressed to the Bankruptcy Court. Specifically, Snohomish contends that the parties never briefed or addressed the issue of FERC's ability to interpret the terms of the Agreement or determine the contractual rights of the parties thereunder; therefore, the Bankruptcy Court exceeded its power by including in the Order an "advisory opinion" rendering any such action by FERC void *ab initio*. Snohomish's characterization of the facts is false and contrary to the record.

As set forth below, the issue of FERC's right to interpret the terms of the Agreement and determine the parties' contractual rights thereunder was front and center in EPMI's motion. Indeed, the very reason for filing the motion was EPMI's concern that Snohomish's Request for Clarification sought to have FERC, and not the Bankruptcy Court, adjudicate the parties' contractual dispute. Moreover, the issue of the respective powers of the Bankruptcy Court and FERC to decide the contractual dispute was briefed by the parties at great length and was the focal point of the oral argument before Judge Gonzalez. Thus, the whole factual premise for Snohomish's appeal is nonexistent. See Point I, infra.

More fundamentally, Snohomish's appeal is improper, as a matter of law. As set forth below, the law is clear that a party cannot appeal from an order or judgment issued in its

favor.   This is especially true when the appellant, that was successful below, merely seeks to change language in the lower court's ruling.   Courts do not permit a party to appeal even "advisory" language when that is the only issue on appeal.   Here, Snohomish is not appealing the Bankruptcy Court's ultimate decision denying EPMI's motion; indeed, Snohomish asserts that it agrees with the Bankruptcy Court's denial of EPMI's motion.   Rather, Snohomish wants this Court to rewrite the Order to its liking and remove the language concerning FERC's capacity to decide the contractual issues in the Adversary Proceeding.   That language, however, is an integral part of the Bankruptcy Court's legal reasoning for its decision denying EPMI's motion.   Snohomish cannot seek to misuse the appellate function for this purpose.   Indeed, had Snohomish truly believed that it was aggrieved by the Order, it could have and should have sought re-argument before the Bankruptcy Court, which it did not.   Having failed to utilize that potential remedy, Snohomish should not be permitted to now ask this Court to rewrite the Order.   See Point I, infra.

          Should this Court decide to review the challenged language in the Order, the Court should find that the Order was correct and consistent with the law.   As set forth below, the Bankruptcy Court has exclusive jurisdiction over the property and administration of the Bankruptcy estate.   In addition, the automatic stay protects EPMI from *any* action against the property of its estate.   There can be no dispute that the Termination Payment owed by Snohomish is property of the Enron estate; thus, any attempt by FERC to determine EPMI's contractual rights to the Termination Payment would infringe on the Bankruptcy Court's jurisdiction and violate the automatic stay.   See Point II.A, infra.

          Moreover, while FERC has exclusive jurisdiction over regulatory issues, it does *not* have exclusive jurisdiction over state-law contract issues, particularly issues that will likely have a significant impact on the size and administration of a debtor's estate.   Indeed, FERC itself has repeatedly acknowledged that it has no special expertise to decide contract enforcement and

interpretation issues, including whether a contract has been breached or properly terminated; rather, such issues are better decided by the courts. See Point II.B, infra. Further, the Bankruptcy Court has the authority to protect its exclusive jurisdiction over the property of the estate and can enjoin other court proceedings and administrative proceedings that interfere with its ongoing jurisdiction. To this end, courts have in fact rendered void *ab initio* actions by other courts and administrative agencies that violated the automatic stay. Accordingly, the Order was correct and consistent with existing law. See Point II.C, infra.

## STATEMENT OF FACTS

**A.      EPMI's Action Against Snohomish In The Bankruptcy Court**

On January 31, 2003, EPMI commenced the Adversary Proceeding against Snohomish in the Bankruptcy Court, seeking to collect a more than $116 million Termination Payment owed under the Agreement. A 17-31. The Termination Payment sought in this action constitutes property belonging exclusively to Enron's estate. Among other things, EPMI alleged that Snohomish violated several provisions of the Bankruptcy Code and breached its contractual obligations by failing to pay the Termination Payment to EPMI as required under the clear and express terms of the Agreement.

The Adversary Proceeding is one of over sixty similar adversary proceedings filed in the Bankruptcy Court (the "Enron Trading Cases"). Like this case, the other Enron Trading Cases generally involve issues relating to various counterparties breaching their obligations under trading contracts with Enron and violating the Bankruptcy Code. The question of Enron's entitlement to Termination Payments due under trading contracts is *the* essential question in almost all of the Enron Trading Cases.

In March 2003, in an effort to promote the efficient and orderly treatment of these cases, the Bankruptcy Court, *sua sponte*, entered an order directing the litigants in the Enron

Trading Cases to participate in a mediation process overseen by Judge Allan L. Gropper.  The court-ordered mediation is pending for all the Enron Trading Cases that have not yet settled, including the Snohomish case.

**B.    Snohomish's Request For Clarification From FERC**

On August 4, 2004, after having participated in the mediation process and without any prior notice to or permission from the Bankruptcy Court, Snohomish filed a "Request for Clarification" with FERC in connection with the consolidated proceeding in FERC Docket No. EL03-180 (the "Gaming/Partnership Proceedings"), to which Snohomish is one of several parties. A. 203-13.  Specifically, Snohomish sought clarification of an order issued by FERC on July 22, 2004 that confirmed the findings of an administrative law judge with respect to payments for disgorgement owed to El Paso Electric Company, a party to the Gaming/Partnership Proceedings, but *not* a party to the Enron Trading Cases.  A. 163-80.

In particular, Snohomish sought a determination that:

(i) the Commission did not intend to exclude from the scope of this proceeding Enron contracts that were executed during the period January 16, 1997 to June 25, 2003 and under which Enron continues to demand, but has not yet collected, unjust profits in the form of termination payments; and (ii) the Commission did not intend to foreclose parties under disputed, terminated contracts from seeking, as an "appropriate remedy" for Enron's violations of tariffs and/or Commission orders, an order holding that Enron forfeited its privilege to receive profits, in excess of Enron's actual costs, due to Enron's unlawful acts and that counterparties need not make windfall payments in excess of Enron's actual costs under those contracts.

A. 204.

When boiled down to its essence, Snohomish's Request for Clarification asked FERC to render the contract between EPMI and Snohomish void and excuse Snohomish from paying the Termination Payment due and owing to EPMI.  Indeed, Snohomish asserted in the Request that "Enron should not be allowed to reap unjust profits prospectively in the form of

termination payments under contracts executed by Enron when Enron was in violation of its market-based rate authority and other tariffs on file at FERC." A. 206-07. Thus, the question posed by Snohomish in its Request for Clarification – *i.e.*, whether the Debtors are entitled to the Termination Payments – was the same question that had been before the Bankruptcy Court for over two years.

**C.    EPMI's Motion To Enforce The Automatic Stay And The Bankruptcy Court's Decision And Order**

On October 26, 2004, EPMI moved the Bankruptcy Court for an Order enforcing the automatic stay, enjoining Snohomish from seeking clarification from FERC and compelling Snohomish to immediately withdraw its Request for Clarification. In its motion, EPMI stated that the Request for Clarification violated the automatic stay because, the Bankruptcy Court, and not FERC, has jurisdiction over state-law contract issues, especially those that concerns the administration and property of the estate.[2] See SA. 3-30; see also SA. 80-96. Snohomish, however, asserted that the Request for Clarification did not violate the automatic stay, because it merely was asking FERC to exercise its exclusive jurisdiction over regulatory issues and FERC was protected by the "governmental unit" exception to the automatic stay. See SA. 31-79. Thus, the central question facing the Bankruptcy Court was the nature and scope of the relief sought by Snohomish in its Request for Clarification – was it merely a request to have FERC exercise its regulatory powers or a request to have FERC decide state-law contractual issues involving the property of the Enron estate. The Bankruptcy Court conducted a hearing on EPMI's motion on December 1, 2004. See SA. 97-181.

On December 21, 2004, the Bankruptcy Court announced its decision on EPMI's motion in open court. See A. 283-304 ("Decision"). In making its Decision, the Bankruptcy Court

---

[2]    Citations to pages of the Appellee's supplemental appendix are referenced herein as "SA. __."

began by outlining the rights and jurisdiction of the court and FERC.  In this regard, the

Bankruptcy Court recognized that "FERC has exclusive jurisdiction to ensure that the rates, terms

and conditions set forth in the contracts affecting wholesale electric power transactions are just and

reasonable" and exclusive jurisdiction over such issues and the Gaming Partnership Proceeding.

A. 292.  At the same time, the Bankruptcy Court acknowledged that it has jurisdiction over state-

law contract issues impacting property of a debtor and, thus, where an action by a governmental

agency "seeks to enforce a contractual right, the action remains subject to the automatic stay."

A. 296.

 The Bankruptcy Court next attempted to apply these principles to EPMI's  motion.

The Bankruptcy Court found that the record made by Snohomish "is *unclear* as to precisely what

Snohomish is requesting of FERC."  A. 301 (emphasis added).  Specifically, the Bankruptcy Court

was uncertain whether Snohomish was seeking to have FERC merely exercise its regulatory

powers or to make decisions concerning state-law contract issues affecting property of the estate

that are within the exclusive jurisdiction of the Bankruptcy Court.  A. 301.  Because of the

Bankruptcy Court's uncertainty as to what Snohomish was seeking, it denied EPMI's motion as

premature.  In elucidating its holding, the Bankruptcy Court set forth the fundamental legal

framework as to which issues were within FERC's jurisdiction and which issues were properly

reserved for the Court to adjudicate.  In this regard, the Bankruptcy Court stated as follows:

> [T]o the extent that the FERC Proceeding would exceed FERC's
> authority in exercising its police and regulatory function concerning
> correcting market abuse and if FERC were to actually undertake to
> interpret the terms of the contract, any such action would be void *ab*
> *initio* absent relief from the automatic stay.

A. 302.  The Bankruptcy Court also stated that any order of disgorgement related to the

Termination Payment by FERC would be evaluated by the Bankruptcy Court for purposes of

determining the impact on the Adversary Proceeding or the treatment of the disgorgement remedy for purposes of distribution under Enron's reorganization plan. A. 302-03.

On January 14, 2005, the Bankruptcy Court issued a two-page Order formalizing its Decision. In the Order, Judge Gonzalez again reiterated that "it is unclear precisely what relief Snohomish seeks from FERC in its Request for Clarification." See A. 306. Accordingly, the Order denies EPMI's motion "in essence, as premature as it could not be determined if [EPMI's requested] relief were necessary; however, to the extent that FERC were to undertake to interpret the terms of the Agreement or to determine the rights of the parties under the terms of the Agreement, any such action would be void *ab initio*." A. 306. Judge Gonzalez also reiterated that "to the extent FERC were to order disgorgement related to the Termination Payment, there would remain issues for this Court to determine as to how any such order for disgorgement would impact on the adversary proceeding or how the disgorgement would be treated for purposes of distribution under a plan of reorganization." A. 306.

**D.      FERC's March 11, 2005 Clarification Order**

On March 11, 2005, FERC issued an order with respect to Snohomish's Request for Clarification. See In re El Paso Elec. Co., Docket Nos. EL03-113-007, -180-007, EL02-154-004, 2005 WL 568526 (FERC Mar. 11, 2005). Specifically, FERC found that "Enron's profits under the terminated contracts fall within the scope of [the Gaming/Partnership Proceedings]." Id. at *3. As stated by the Commission,

> The termination payments are based on profits Enron projected to receive under its long-term, wholesale power contracts executed during the period when Enron was in violation of conditions of its market-based rate authority. The Commission finds that these matters would benefit from a full examination at hearing. Therefore, the Commission directs that these matters be examined in the ongoing consolidated hearing before the ALJ in Docket No. EL03-180 . . . *subject to any applicable bankruptcy restrictions.*

10

Id. (emphasis added). Thus, FERC itself acknowledged that while the issue of EPMI's profits falls within the scope of the Gaming/Partnership Proceedings, there would be issues concerning these profits that are affected by EPMI's status as a debtor in bankruptcy that must be resolved in and by the Bankruptcy Court, not FERC.

## **ARGUMENT**

## I.     **THIS COURT LACKS JURISDICTION TO ENTERTAIN AN APPEAL BY SNOHOMISH FROM A JUDGMENT ISSUED IN ITS FAVOR**

Notwithstanding the fact that the Bankruptcy Court *denied* EPMI's motion and did not order that Snohomish be enjoined or that it withdraw its Request for Clarification, Snohomish has filed this appeal asking the Court to strike the Bankruptcy Court's reasoning and language in the Order that Snohomish does not like. Specifically, Snohomish contends that the Bankruptcy Court's statement in its Order that any determination by FERC with respect to the parties contractual rights under the Agreement would be void *ab initio* was an improper "advisory opinion" and, therefore, should be stricken from the Order. Snohomish's attempt to rewrite the Order to its liking is an unprecedented and improper use of the appellate function.

As an initial matter, the entire factual premise underlying Snohomish's appeal is false and contrary to the record. In support of its appeal, Snohomish asserts that the parties never briefed or addressed the issue of FERC's ability to interpret the terms of the Agreement or determine the contractual rights of the parties thereunder; therefore, according to Snohomish, it was improper for the Bankruptcy Court to address this issue in its Order. See Snohomish Br. at 12-14. This is simply not true. The issue of FERC's right to interpret the terms of the Agreement and the contractual rights of the parties thereunder was front and center in EPMI's motion. Indeed, the very reason for filing the motion was EPMI's concern that Snohomish's Request for Clarification sought to have FERC, and not the Bankruptcy Court, adjudicate the parties' contractual dispute.

Moreover, the issue of the respective powers of the Bankruptcy Court and FERC to decide the contractual dispute was briefed by the parties at great length and was the focal point of the oral argument before Judge Gonzalez. This is thoroughly demonstrated by the Bankruptcy Court's Decision, in which it characterized the parties' positions as follows:

> Enron argues that the Request for Clarification improperly seeks to bring before FERC the contract interpretation issues that are currently pending before this Court and which have been referred to mediation by this Court.
>
> *            *            *
>
> [EPMI] contends that under the guise of a Request for Clarification, Snohomish has attempted to interpose into the consolidated FERC Proceeding the dispute with [EPMI] concerning the issue of the Termination Payment. [EPMI] further argues that the issue concerning the Termination Payment is a state-law contract interpretation issue that exceeds the scope of the issues presented in FERC Proceeding. Snohomish argues that the clarification request concerns only the question of the scope of the remedies available under the Federal Power Act for the violations that FERC is investigating in the consolidated proceeding and has nothing to do with any issues of contract law that are before this Court.

A. 290, 294. Thus, Snohomish's contention that the issue of the Bankruptcy Court's right to interpret the terms of the Agreement and the contractual rights of the parties thereunder "was simply not before the Court" and "never fully briefed by the parties" cannot stand. Snohomish Br. at 14.

Not only is Snohomish's appeal unfounded as a factual matter, it is improper as a matter of law. It is well-settled that a party cannot appeal from a judgment issued in its favor. As stated by the United States Supreme Court, "[a] party who receives all that he has sought generally is not aggrieved by the judgment affording the relief and cannot appeal from it." Deposit Guar. Nat'l Bank, Jackson, Miss. v. Roper, 445 U.S. 326, 333 (1980); see also Electrical Fittings Corp. v. Thomas & Betts Co., 307 U.S. 241, 242 (1939) ("A party may not appeal from a judgment or

decree in his favor"); <u>Spencer v. Casavilla</u>, 44 F.3d 74, 78 (2d Cir. 1994) ("[A] party to a lawsuit has no standing to appeal an order unless he can show some basis for arguing that the challenged action causes him a cognizable injury, <i>i.e.</i>, that he is 'aggrieved' by the order"); <u>In re Public Serv. Co. of N.H.</u>, 898 F.2d 1, 2 (1st Cir 1990) ("We cannot decide this matter now, however, for a party cannot appeal a judgment entered in its own favor"); <u>Balcom v. Lynn Ladder & Scaffolding Co.</u>, 806 F.2d 1127, 1127 (1st Cir. 1986) ("Appellant cannot appeal the district court's failure to set aside [an adverse] finding for the basic reason that appellant did not lose the case below; it won"); <u>United States v. Good Samaritan Church</u>, 29 F.3d 487, 488-89 (9th Cir. 1994) ("We dismiss this appeal because the appellants won the case below. . . . The judgment was entirely favorable to appellants so we have no jurisdiction over the appeal").

This well-established principle of appellate review is especially true where the appellant, who was successful below, seeks an appeal merely to address language in the lower court's ruling that sheds light on the court's reasoning or holding, or is characterized as dicta. <u>See Bath Iron Works Corp. v. Coulombe</u>, 888 F.2d 179, 180 (1st Cir. 1989) (dismissing appeal for lack of jurisdiction where portion of order being appealed was dicta); <u>Arthur Treacher's Fish & Chips, Inc. v. A & B Mgmt. Corp. (In re Arthur Treacher's Franchisee Litig.)</u>, 689 F.2d 1137, 1149 n.16 (3d Cir. 1982) (dismissing cross-appeal "filed in an effort to have [the appellate court] review and reject one sentence . . . of the district court's opinion. . . . We refrain from commenting on the merit of an appeal taken from a mere observation which is found in the district court's opinion") (citing <u>Electrical Fittings</u>, 307 U.S. at 242).

The District Court's decision in <u>In re Adelphia Communications Corp.</u>, 298 B.R. 49 (S.D.N.Y. 2003) (Baer, J.), is particularly instructive. In that case, Judge Harold Baer, Jr., declined to hear a party's appeal from statements made by the Bankruptcy Court that, the appellant claimed, could be construed as legally binding. As Judge Baer explained,

> [Appellants] seek to have this Court deem these and other statements dicta and not legally binding. "Whether the court's discussion . . . is dicta is better suited to be addressed in any subsequent litigation where the issue [discussed] arises" . . . . Any opinion by me would be no more than advisory, and thus I decline to reach the matter.

Id. at 55 (quoting RJE Corp. v. Northville Indus. Corp., 329 F.3d 310, 316 (2d Cir. 2003)).

Here, Snohomish is not appealing the Bankruptcy Court's ultimate decision denying EPMI's motion. Indeed, Snohomish asserts in its brief that it agrees with the Bankruptcy Court's ultimate ruling on EPMI's motion: "The Bankruptcy Court properly denied EPMI's motion to enjoin Snohomish's participation in the [Request for Clarification] made in FERC Proceeding." Snohomish Br. at 11. Rather, Snohomish appeals because it is unhappy with the language in the Bankruptcy Court's Order explaining the ultimate result and wishes to have such language excised. That language, however, is part of, indeed central to, the Bankruptcy Court's legal reasoning for its decision denying EPMI's motion. At most, that language is dicta. In either case, consistent with the above axiomatic case law, Snohomish may not abuse the appellate function for this purpose. Snohomish has not cited a single case holding that it is proper to appeal from a decision issued in the appellant's favor.

In addition, even if the challenged language in the Order were deemed advisory (which it is not), Snohomish's appeal is inappropriate because there can be no appellate review of *only* an advisory opinion by a bankruptcy court. Under the very rubric of the "case and controversy" rule relied upon by Snohomish, courts have held that there is no appellate review of an advisory opinion by a bankruptcy court when that is the only issue on appeal. See Johnson v. Hous. Auth. of Pitt., 52 Fed. Appx. 589, 590 (3d Cir. 2002) ("We agree with the District Court that Johnson's appeal to it was moot because she had obtained the public housing she sought and the resolution of the issue she raised on appeal could have had no effect on her case or her legal rights"); McDonald v. Master Fin., Inc. (In re McDonald), 205 F.3d 606, 608 (3d Cir.) (no

appellate jurisdiction exists to review unauthorized advisory opinion issued by bankruptcy court), cert. denied, 531 U.S. 822 (2000); see also County of Morris v. Nationalist Movement, 273 F.3d 527, 533 (3d Cir. 2001) ("[T]he requirement that an action involve a live case or controversy extends through all phases of litigation, *including appellate review*") (emphasis added); see also Public Serv. Co. of Colo. v. United States EPA, 225 F.3d 1144, 1148-49 (10th Cir. 2000) (dismissing appeal which "fails to challenge a 'final action'" for want of jurisdiction).

Thus, whether the language in the Order that Snohomish seeks to strike is deemed to be judicial reasoning, dicta or even advisory, Snohomish's appeal is improper as a matter of law.[3]

## II.    THE BANKRUPTCY COURT'S ORDER RESTRICTING FERC FROM DECIDING THE PARTIES' CONTRACTUAL RIGHTS UNDER THE AGREEMENT IS CONSISTENT WITH THE LAW AND THE POWERS GRANTED TO THE COURT BY CONGRESS

Should this Court decide to review the challenged language in the Bankruptcy Court's Order, the Court should find that the Bankruptcy Court's ruling was consistent with the law. Snohomish contends that the language in the Order rendering a decision by FERC concerning the contractual rights of the parties under the Agreement "void *ab initio*" is contrary to the law and improperly interferes with FERC's exclusive jurisdiction over the regulatory issues in the

---

[3]    Equally without merit is Snohomish's argument that the last paragraph of the Order addressing the Bankruptcy Court's authority to implement any disgorgement order by FERC is advisory and improper. The Bankruptcy Court merely said that, to the extent FERC were to order disgorgement related to the Termination Payment, "there would remain issues for this Court to determine as to how any such order for disgorgement would impact on the adversary proceeding or how the disgorgement would be treated for purposes of distribution under a plan of reorganization. A. 306. This is simply a statement of the law; there is nothing advisory or improper about this statement. As discussed below in Point II, there can be no dispute that the Bankruptcy Court has the right to protect the property, interest and administration of the Enron estate, which includes the $116 million Termination Payment owed by Snohomish. Indeed, FERC acknowledged this right of the Bankruptcy Court in its March 11, 2005 ruling on Snohomish's Request for Clarification, where it directed "that these matters be examined in the ongoing consolidated hearing before the ALJ . . . *subject to any applicable bankruptcy restrictions*." See In re El Paso Elec., 2005 WL 568526, at *3 (emphasis added).

Gaming/Partnership Proceeding.  In this regard, Snohomish contends that FERC "has exclusive jurisdiction over the rates, terms and conditions of service provided for in wholesale electricity contracts" and, therefore, the "Bankruptcy Court cannot infringe upon FERC's exclusive jurisdiction by declaring – prospectively or otherwise – that rulings issued or to be issued by FERC are 'void *ab initio*.'"  Snohomish Br. at 15, 18.  Again, Snohomish misinterprets the Order as well as the law.

A.    **The Bankruptcy Court Has Exclusive Jurisdiction Over Issues That Involve The Property And Administration Of The Enron Estate**

The Bankruptcy Code provides for an automatic stay of any action against the property of the bankruptcy estate.  The automatic stay is mandatory and begins from the time a bankruptcy petition is filed.  See In re Enron Corp., 300 B.R. 201, 211 (Bankr. S.D.N.Y. 2003) (Gonzalez J.) ("The stay protection in [Section] 362 is automatic and mandatory with the filing of the petition").  The automatic stay is intended to facilitate the successful reorganization of the debtor, and thereby effect an equitable distribution of the debtor's assets among its creditors, by providing a debtor breathing space from creditor claims during which to formulate a plan of reorganization.  See In re Ionosphere Clubs, 922 F.2d at 989; Petrusch v. Teamsters Local 317 (In re Petrusch), 667 F.2d 297, 299 (2d Cir. 1981), cert. denied, 456 U.S. 974 (1982).

Specifically, Section 362(a)(3) of the Bankruptcy Code prohibits "*any* act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."  11 U.S.C. § 362(a)(3) (emphasis added); see also Keene Corp. v. Acstar Ins. Co. (In re Keene Corp.), 162 B.R. 935, 941 (Bankr. S.D.N.Y. 1994) (Bernstein, J.) ("The automatic stay provides broad protection to [the debtor] . . . preventing any act to obtain possession or control of property of the estate") (citations omitted).[4]  Section 541(a) of the Bankruptcy Code

---

[4]    The Bankruptcy Court has ample authority pursuant to Section 105 of the Code to enforce the automatic stay and enjoin Snohomish's violation of the automatic stay.  As the United States Court of Appeals for the

16

broadly defines property of the estate to include "all legal or equitable interests of the debtor in property as of the commencement of the case" as well as "property that the estate acquires after the commencement of the case." 11 U.S.C. § 541(a)(1), (7). Applying this broad definition, courts repeatedly have held that a debtor's contracts, and its rights in and under such contracts, constitute property of the estate. See Cohen v. Drexel Burnham Lambert Grp., Inc. (In re Drexel Burnham Lambert Grp., Inc.), 138 B.R. 687, 702 (Bankr. S.D.N.Y. 1992) (Conrad, J.) (holding that "contracts are property of the estate within the meaning of [Section] 541"); LTV Corp. v. Aetna Cas. & Sur. Co. (In re Chateaugay Corp.), 116 B.R. 887, 898 (Bankr. S.D.N.Y. 1990) (Lifland, J.) ("Contractual rights are intangible property which is included within the definition of the estate of the debtor").

Here, there can be no dispute that the Termination Payment sought by EPMI under the Agreement is property of its estate. Thus, any attempt by FERC to determine EPMI's contractual entitlement to the Termination Payment would substantially affect the property of the Enron estate and violate the automatic stay.

While there is a "governmental unit" exception to the automatic stay, that exception is narrowly construed and does not apply to adjudication of a private state-law contract dispute. As the Bankruptcy Court correctly recognized in its Decision, "[t]he governmental unit exception provided in section 362(b)(4) of the Bankruptcy Code applies *only* in relation to actions enforcing 'generally applicable regulatory laws' governing a debtors conduct." A. 295 (citing Corporacion de Servicios Medicos Hospitalarios de Fajardo v. Mora (In re Corporacion de Servicios Medicos Hospitalarios de Fajardo), 805 F.2d 440, 445 (1st Cir. 1986)) (emphasis added). "Even where an

---

Second Circuit in Momentum Manufacturing Corp. v. Employee Creditors Committee (In re Momentum Manufacturing Corp.), 25 F.3d 1132 (2d Cir. 1994), stated, Section 105(a) should be "'"construed liberally to enjoin [actions] that might impact the reorganization process."'" Id. at 1136 (quoting Official Comm. of Unsecured Creditors v. PSS S.S. Co. (In re Prudential Lines Inc.), 928 F.2d 565, 574 (2d Cir.), cert. denied, 502 U.S. 821 (1991)).

action by a governmental agency is related to the agency's regulatory power, where the action seeks to enforce a contractual right, the action remains subject to the automatic stay." A. 296; see also Enron Corp. v. California (In re Enron Corp.), 314 B.R. 524, 538 (Bankr. S.D.N.Y. 2004) (Gonzalez, J.) ("When the primary purpose of a government lawsuit is to seek money damages or other monetary relief for past conduct, and not to prevent future conduct that could harm the public health or safety, the courts hold that the police power exception to the automatic stay does not apply"); University Med. Ctr. v. Sullivan (In re University Med. Ctr.), 973 F.2d 1065, 1075 (3d Cir. 1992) (holding that federal agency's withholding of payments under contract "[does] not fall within [the] police power exception to the stay"; section 362(b)(4) does not permit government agencies "to enforce *contractual* rights") (emphasis in original); Board of Cty. Comm'rs of Archuleta v. Fairfield Communities, Inc., 122 B.R. 128, 130 (D. Colo. 1990) ("[B]ecause this action, in essence, is an attempt to enforce contractual rights, [Section] 362(b)(4) is inapplicable and the action must be stayed"). In fact, FERC *itself* has recognized that Section 362(b)(4) does not apply to actions seeking to enforce or modify monetary obligations. See Northern Cal. Power Agency v. Pacific Gas & Elec. Co. (In re Pacific Gas & Elec. Co.), Docket Nos. ER01-2998-000, ER02-358-000, EL02-64-000, 2002 WL 398318, at *5 & n.10 (FERC Mar. 14, 2002) (noting that Section 362(b)(4) exception applies only where FERC's exercise of its regulatory power "does not threaten the bankruptcy court's control over the property of the bankruptcy estate. . . . *This order does not change any monetary obligations, and therefore, has no effect on the estate*") (emphasis added).

Accordingly, the Bankruptcy Court was correct in concluding that "[a] commercial contract dispute does not involve FERC's police or regulatory powers" and "[w]ithout obtaining relief from the stay, any action taken by FERC to interpret the terms of the contract would be void ab initio." A. 296-97.

18

**B.**    **The Bankruptcy Court, And Not FERC, Has Jurisdiction Over The State-Law Contract Issues Impacting The Property Of The Enron Estate In The Adversary Proceeding**

Not only does the Bankruptcy Court have jurisdiction over issues concerning the property and administration of the estate, but it also has jurisdiction over the state-law contractual issues impacting the property of the Enron estate in the Adversary Proceeding. No one disagrees with Snohomish that FERC has exclusive jurisdiction over regulatory issues; however, FERC does *not* have exclusive jurisdiction over state-law contract issues. As the Fifth Circuit Court of Appeals recently concluded in <u>Mirant Corp. v. Potomac Electric Power Co. (In re Mirant Corp.)</u>, 378 F.3d 571 (5th Cir. 2004), FERC does not have exclusive jurisdiction over the breach of a trading contract and the bankruptcy court can in fact enjoin FERC from interfering with the bankruptcy court's jurisdiction to determine whether the trading contract should be rejected. <u>Id.</u> at 523. Indeed, FERC has repeatedly acknowledged that it has no special expertise to decide contract enforcement and interpretation issues, including whether a contract has been breached and/or properly terminated; instead, such issues are better decided by the courts. <u>See</u> <u>Kansas Gas Serv. v. Enbridge Pipelines KPC</u>, Docket No. RP02-143-000, 2002 WL 471197, at *6 (FERC Mar. 28, 2002) (declining to decide "questions of contract interpretation which can be well or better resolved in state court"); <u>In re PPL Montana LLC</u>, Docket No. ER01-2633-000, 2001 WL 1076596, at *3 (FERC Sept. 14, 2001) (declining to decide "issues of contract interpretation and performance"); <u>In re PPL Elec. Utils. Corp.</u>, Docket No. ER00-2689-000, 2000 WL 1100277, at *5 (FERC July 26, 2000) (declining to adjudicate whether material change clause in contract authorized termination); <u>In re Southern Cal. Edison Co.</u>, Docket No. EL98-34-000, 1998 WL 683334, at *3 (FERC Oct. 2, 1998) ("The parties to power sales contracts regularly define the terms and conditions of services to be provided under their contracts, and we generally allow them to do so freely"); <u>In re Portland Gen. Elec. Co.</u>, Docket No. EL94-92-000, 1995 WL 394547, at

19

\*\*3-4 (FERC July 5, 1995) (declining to decide whether contract was breached or properly terminated).

      FERC's policy of declining to assert jurisdiction over contractual issues is even stronger where the dispute is already before a court. <u>See</u> <u>In re Amoco Prod. Co.</u>, Docket No. GP87-47-000, 1998 WL 244437, at \*5 (FERC May 6, 1988) (the Commission's "policy is not to unilaterally intervene in matters pending in court absent special or extraordinary circumstances"); <u>see also</u> <u>In re Louisiana Natural Gas Pipeline Inc.</u>, Docket No. RP93-91-000, 1993 WL 453120, at \*2 (FERC Nov. 4, 1993) ("The Commission declines to intervene in this contractual dispute since the matter is now before the court"); <u>El Paso Natural Gas Co. v. Kaneb Energy Co.</u>, Docket No. GP90-15-000, 1991 WL 265381, at \*3 (FERC May 8, 1991) ("Accordingly, we shall dismiss the complaint with respect to the claims relating to the issue of contract authorization because of the pending state court action, particularly since that is where El Paso first filed for the relief it seeks"). Here, the issues concerning application of the terms of the Agreement and Snohomish's contractual obligation to pay the Termination Payment to EPMI have been before the Bankruptcy Court for more than two years. Thus, the Bankruptcy Court was correct in issuing a ruling that preserved its jurisdiction over the state-law contract issues in the Adversary Proceeding.

      Importantly, several Judges in the Southern District have previously recognized the Bankruptcy Court's ability to control the resolution of the state-law contract issues concerning Termination Payments given that such issues are central to its ability to administer the Enron estate. <u>See</u>, <u>e.g.</u>, <u>Enron Power Mktg, Inc. v. Luzenac Am., Inc. (In re Enron Corp.)</u>, No. 03 Civ. 1524, <u>slip</u> <u>op.</u> at 1-2 (S.D.N.Y. Mar. 25, 2004) (Preska, J.) ("Because this is only one of numerous cases pending in the Bankruptcy Court involving analogous claims and issues, uniformity and efficiency will best be served by permitting one judge, the one most familiar with the cases and the claims, to administer them"); <u>American Coal Co. v. Enron N. Am. Corp. (In re Enron Corp.)</u>, No.

20

03 Civ. 1727 LTS, hearing transcript/oral decision & order at 31 (S.D.N.Y. June 25, 2003) (Swain, J.) ("This action involves issues and claims similar to those asserted in numerous other cases, including at least 28 additional adversary proceedings, that are before Judge Gonzalez in the bankruptcy court. The bankruptcy court has overseen Enron's estate and its administration and is fully equipped with the tools to proceed with this matter up to trial without interference by the district court"), certif. denied, No. 03 Civ. 1727 LTS, 2003 WL 22481030 (S.D.N.Y. Nov. 4, 2003) (Swain, J.), writ of mandamus denied, No. 03-3121, slip op. (2d Cir. June 23, 2004); Enron Power Mktg., Inc. v. City of Santa Clara (In re Enron Power Mktg., Inc.), No. 01 Civ. 7964, 2003 WL 68036, at *5 (S.D.N.Y. Jan. 8, 2003) (Baer, J.) (denying Santa Clara's motion for mandatory withdrawal because the case was "a simple action for . . . breach of contract,' one which '[t]he Bankruptcy Court can resolve . . . by analyzing and considering the clear and unambiguous language of the [agreement] itself and the facts in this case'").[5]

Accordingly, Snohomish's argument that the portion of the Order restricting FERC from interpreting the terms of the Agreement and the rights of the parties thereunder was contrary to the law is wrong and should be denied.

C.    **The Bankruptcy Court Always Has The Power To Interpret And Apply The Automatic Stay**

Snohomish further contends that the Order was improper because neither the Bankruptcy Court nor Enron can review or nullify a decision by FERC until it has complied with

---

[5]    These decisions were issued in connection with withdrawal of reference motions filed by several defendants' to the Enron Trading Cases. To date, there have been twelve such motions filed, all of which have been denied with the single exception of the motion filed in this Court by the California Power Exchange. See Enron Power Mktg., Inc. v. California Power Exch. Corp. (In re Enron Corp.), No. 04 Civ. 8177, 2004 WL 2711101 (S.D.N.Y. Nov. 23, 2004) (Casey, J.). However, in that case, this Court granted the motion to withdraw the reference because, as the Court determined, the question before the Bankruptcy Court involved "substantial and material consideration of federal law beyond Title 11" – specifically, interpretation of the Federal Power Act – and thus required the adjudication of matters beyond the state law contractual issues raised by EPMI's adversary proceeding. Id. at *4. Implicit in that ruling was the principal that state-law contract issues were the province of the Bankruptcy Court.

21

the exhaustion of administrative remedies requirement of the FPA.  See Snohomish Br. at 18-19.
This argument is meritless and contrary to existing case law.

        There can be no dispute that the Bankruptcy Court has the authority to protect its
jurisdiction over the property of the estate.  The automatic stay, although created by statute, is an
order of the Bankruptcy Court.  A principal purpose of the automatic stay is to allow "'the
bankruptcy court to centralize all disputes concerning property of the debtor's estate in the
bankruptcy court so that reorganization can proceed efficiently, unimpeded by uncoordinated
proceedings in other arenas.'"  In re Enron, 314 B.R. at 534 (quoting In re Ionosphere Clubs, 922
F.2d at 989).  Thus, bankruptcy courts are given the power under section 105 of the Bankruptcy
Code "to preserve [their] jurisdiction by enjoining proceedings that would remove property of the
bankrupt estate."  Loewi Realty Corp. v. Chanticleer Assocs., Ltd. (In re Chanticleer Assocs.,
Ltd.), 592 F.2d 70, 74 (2d Cir. 1979).  The bankruptcy courts are also given exclusive jurisdiction
over property of the estate.  See 28 U.S.C. § 1334(a).  As the Fifth Circuit Court of Appeals
recently concluded in Mirant, under section 105, the bankruptcy court "can clearly grant injunctive
relief to prohibit FERC" from interfering with the court's jurisdiction to determine whether power
contracts should be rejected.  In re Mirant, 378 F.3d at 523.  Here, by reviewing any decision by
FERC concerning the contractual rights of the parties under the Agreement, the Bankruptcy Court
is in fact protecting its ongoing jurisdiction over the issues involving property of the estate that
have been before the Bankruptcy Court for more than two years.

        Snohomish's exhaustion of remedies argument is also inconsistent with the settled
rule that "a bankruptcy court may enjoin proceedings in other courts when it is satisfied that such a
proceeding would defeat or impair its jurisdiction with respect to a case before it."  LTV Steel Co.
v. Board of Educ. of Cleveland City Sch. Dist. (In re Chateaugay Corp.), 93 B.R. 26, 29 (S.D.N.Y.
1988) (Leval, J.).  There is no reason why the rule in this respect should be different for

administrative proceedings, as opposed to court actions.   Indeed, contrary to Snohomish's

contention, federal courts have routinely enjoined administrative proceedings that interfere with the

court's ongoing jurisdiction and rendered void *ab initio* actions by administrative agencies that

violate the automatic stay.   See, e.g., In re Mirant, 378 F.3d at 523; Chao v. Hospital Staffing

Servs., Inc., 270 F.3d 374, 384 (6th Cir. 2002) ("Administrative proceedings before a federal

agency may likewise be declared void *ab initio* if a court determines that the agency incorrectly

determined that the stay did not bar the proceedings"); Contractors' State License Bd. of Cal. v.

Dunbar (In re Dunbar), 245 F.3d 1058, 1063 (9th Cir. 2001) ("If actions taken by a state court in

violation of an automatic stay are void, so too must be analogous actions taken by the board of a

state administrative agency"); Phillips Beverage Co. v. Belvedere, S.A., 204 F.3d 805, 806 (8th

Cir. 2000) (requiring withdrawal of administrative proceeding before Custom Service); Mumford

Cove Ass'n, Inc. v. Town of Groton, Conn., 647 F. Supp. 671, 691 (D. Conn. 1986) (the court can

enjoin "any . . . agency which in effect prevents, or purports to prevent, conduct necessary to

comply with this [C]ourt's June 10, 1986 order").   Accordingly, Snohomish's exhaustion of

remedies argument is simply unfounded.

        In support of its exhaustion of remedies argument, Snohomish relies on Board of

Governors of Federal Reserve System v. MCorp Financial, Inc., 502 U.S. 32 (1991).  Snohomish's

reliance on the MCorp case is misplaced.  In that case, the Supreme Court found that enforcement

of a regulatory provision promulgated by the Federal Reserve was excepted from the automatic

stay.  This case did *not* involve the question of whether the debtor is entitled to a money judgment

under a private contract.  As stated by Judge Gonzalez in his Decision:  "A matter concerning

state-law contract interpretation is unlike the MCorp case, because it does not concern an issue that

is within FERC's regulatory authority."  A. 298.  Moreover, the MCorp Court's reference to the

automatic stay not applying to ongoing agency proceedings is a reference to the fact that, even if an

agency proceeding is exempt from the automatic stay under the police power and regulatory power exception, there is an exception to the exception that precludes any enforcement of a judgment resulting from the agency proceeding outside the Bankruptcy Court. See 502 U.S. at 41 ("If and when the Board's proceedings culminate in a final order . . . then it may well be proper for the Bankruptcy Court to exercise its concurrent jurisdiction under 28 U.S.C. § 1334(b)"). Snohomish seeks to turn MCorp on its head and pretend that the automatic stay never applies to any ongoing agency proceeding, when Section 362(a)(1) specifically makes the stay applicable to "administrative" actions or proceedings.

Snohomish's reliance on In re FCC, 217 F.3d 125 (2d Cir.) ("Nextwave II"), cert. denied sub nom., 531 U.S. 1029 (2000), is also misguided. While Snohomish cites to Nextwave II for the proposition that the Bankruptcy Court lacks the power to review an agency's regulatory rulings, the issue in that case was whether the Bankruptcy Court had the authority to review an order of the Federal Communications Commission ("FCC") concerning the auctioning of the debtor's spectrum licenses – a regulatory issue. As the Second Circuit stated, "whenever an FCC decision implicates its exclusive power to dictate the terms and conditions of licensure, the decision is regulatory." Id. at 135. Here, by contrast, Snohomish seeks to strike those portions of the Bankruptcy Court's order preserving its jurisdiction on two *non-regulatory* issues: (1) a determination of the parties' rights under the Agreement, an issue of state contract law, and (2) how a disgorgement order by FERC should be treated for purposes of distribution under the Enron estate's reorganization plan, an issue of federal bankruptcy law.

In sum, the Bankruptcy Court was correct and acted in accordance with existing case law in protecting its ongoing jurisdiction over the state-law contractual issues in the Adversary Proceeding and its exclusive jurisdiction over its administration of the Enron estate. Accordingly, Snohomish's appeal of the Order is improper and should be denied.

## CONCLUSION

For the foregoing reasons, the Court should affirm the Bankruptcy Court's January 14, 2005 Order and deny Snohomish's appeal in its entirety.

Dated:    New York, New York
          May 6, 2005

                         WEIL GOTSHAL & MANGES LLP

                         By: /s/ Jonathan D. Polkes
                                Jonathan D. Polkes (JDP 4265)

                         767 Fifth Avenue
                         New York, NY 10153
                         (212) 310-8000

                         CADWALADER, WICKERSHAM & TAFT LLP

                         By: /s/ Israel Dahan
                                Israel Dahan (ID 6148)

                         One World Financial Center
                         New York, NY 10281
                         (212) 504-6000

                         Mark C. Ellenberg (ME 6927)

                         1201 F Street, N.W. Suite 1100
                         Washington, DC  20004
                         (202) 862-2200

                         *Attorneys for Plaintiff-Appellee*