UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>ENRON CORP., et al.,<br><br>               Debtors. | District Court<br>Case No. 05-CV-2710 (RCC) |
| ENRON POWER MARKETING, INC.,<br><br>               Appellee-Plaintiff,<br><br>   -against-<br><br>PUBLIC UTILITY DISTRICT NO. 1 OF<br>SNOHOMISH COUNTY,<br><br>               Appellant-Defendant. | Bankruptcy Court<br>Case No. 01-16034 (AJG)<br><br>Adv. Pro. No. 03-2064 (AJG) |

## REPLY BRIEF OF APPELLANT PUBLIC UTILITY DISTRICT NO. 1 OF SNOHOMISH COUNTY, WASHINGTON

Alan Kolod Esq.
Alan E. Gamza, Esq.
Philippe Zimmerman, Esq.
MOSES & SINGER LLP
1301 Avenue of the Americas
New York, New York  10019
212-554-7800

Michael A. Goldfarb, Esq.
LAW OFFICES OF MICHAEL A. GOLDFARB
1150 Market Place Tower
2025 First Avenue
Seattle, Washington 98121
206-374-7090

*Attorneys for Defendant-Appellant*

## TABLE OF CONTENTS

I.      **INTRODUCTION** ................................................................................................ 1

II.     **ARGUMENT** ...................................................................................................... 2

      A.     **The Bankruptcy Court's Order Presents A Clear And
          Immediate Threat To Snohomish's Legal Rights And
          Therefore Is Properly Justiciable In This Court** ................................... 2

      B.     **The Bankruptcy Court's Assertion That It Can Declare
          FERC Action "Void *Ab Initio*" Is An Improper
          Advisory Opinion** ................................................................................. 4

      C.     **The Bankruptcy Court's Assertion Of Jurisdiction To
          Declare FERC Orders "Void *Ab Initio* " Is Contrary
          To *Nextwave II*** ................................................................................... 4

      D.     **Enron's Remaining Arguments are Without Merit** .............................. 9

III.    **CONCLUSION** .............................................................................................. 11

## TABLE OF AUTHORITIES

**Cases**

*B.T. Produce Co. v. Robert A Johnson Sales, Inc.,*
    354 F.Supp. 2d 284 (S.D.N.Y. 2004)...................................................................... 2

*Bath Iron Works Corp. v. Coulombe,*
    888 F.2d 179 (1st Cir. 1989) .............................................................................. 3, 4

*Board of Governors of Federal Reserve System v. MCorp Financial, Inc.,*
    502 U.S. 32 (1991)................................................................................................. 5

*Chao v. Hospital Staffing Services, Inc.,*
    270 F.3d 374 (6th Cir. 2002) ................................................................................ 7

*Contractor's State License Bd. v. Dunbar (In re Dunbar),*
    245 F.3d 1058 (9th Cir. 2001) .............................................................................. 7

*Deposit Guaranty National Bank, Inc. v. Roper,*
    445 U.S. 326 (1980)............................................................................................... 3

*Electrical Fittings Corp. v. Thomas & Betts Co.,*
    307 U.S. 241 (1939)............................................................................................... 3

*FPC v. Louisiana Power & Light,*
     406 U.S. 621 (1972)............................................................................................. 9

*In re Adelphia Communications Corp.,*
    298 B.R. 49 (S.D.N.Y. 2003)............................................................................... 10

*In re Bean,* 252 F.3d  113 (2nd Cir. 2001)....................................................................... 4

*In re Berry Estates, Inc. d/b/a Blueberry Hill Mgmt. Corp. v. State of New York*
    *(In re Berry Estates, Inc.),*
    812 F.2d 67, 71 (2d Cir. 1987)............................................................................... 5

*In re Corporacion de Servicios Medicos Hosp.,*
    805 F.2d 440 (1st Cir. 1986)................................................................................. 7

*In re FCC,*
    217 F.3d 125 (2nd Cir. 2000)................................................................. 1, 4, 5, 10

*In re Goodman,*
    873 F.2d 598 (2nd Cir. 1989)............................................................................... 9

*In re Mirant,*
    378 F.3d 511 (5th Cir. 2004) .......................................................... 6, 7

*Kaggen v. I.R.S.,*
    71 F.3d 1018 (2d Cir. 1995)............................................................... 2

*Lockyer v. FERC,*
    383 F.3d 1006 (9th Cir. 2004), *petition for rehearing pending* ........................... 10

*Mumford Cove Ass'n, Inc. v. Town of Groton*,
    647 F. Supp. 671 (D. Conn. 1986)...................................................... 8

*New York State Elec. & Gas Corp. v. New York Indep. System Operator, Inc.,*
    168 F. Supp. 2d 23 (N.D.N.Y. 2001) .................................................. 11

*Phillips Beverage Co. v Belvedere, S.A.,*
    204 F. 3d 805 (8th Cir. 2000) ............................................................ 8

## Other Authorities

*Enron Power Marketing, Inc.,*
    110 FERC ¶61,280 (F.E.R.C. Mar. 11, 2005) ....................................... 5

*Michigan Wisconsin Pipeline Co.,*
    32 FERC ¶ 61,408 (F.E.R.C. Sep. 19, 1985) ........................................ 8

*Sacramento Mun. Util. Dist. v. Pacific Gas & Elec. Co.,*
    37 FERC ¶61,323 (F.E.R.C. Dec. 30, 1986), *reh'g denied,*
    38 FERC ¶61,194 (F.E.R.C. Feb. 25, 1987) ........................................ 8

# I.  INTRODUCTION

As affirmed in *Nextwave II,* a Bankruptcy Court is "*utterly without the power*" to review matters decided by a federal regulatory agency acting within its exclusive jurisdiction.  See *In re FCC,* 217 F.3d 125, 132-135 (2nd Cir. 2000) ("*Nextwave II*") (emphasis in original).  In this case, the Bankruptcy Court disregarded *Nextwave II* by issuing an order declaring "void *ab initio*" the possible future determinations by the Federal Energy Regulatory Commission ("FERC" or the "Commission") in an ongoing regulatory proceeding.  Enron's attempt to justify the Bankruptcy Court's plainly improper interference with an ongoing regulatory proceeding does not withstand scrutiny.

Enron's motion to stay the Clarification Request filed by Snohomish and other parties to the FERC Partnership and Gaming Proceedings in July of 2004 was denied.  The Bankruptcy Court should have simply denied Enron's motion, as proposed by Snohomish.  Enron, however, invited this dispute by rejecting Snohomish's proposed form of order and submitting to the Bankruptcy Court an order, that went far beyond the narrow issues raised in Enron's motion to stay the Clarification Request.  The Bankruptcy Court accepted Enron's invitation and entered the Order.

The Order not only purports to rule on issues that do not presently exist, it holds that if "FERC were to undertake to interpret the terms of the Agreement or to determine the rights of the parties under the Agreement, any such action would be void *ab initio*." The Bankruptcy Court's Order is improper and should be scaled back to simply provide that Enron's motion is denied.

After having vigorously fought for inclusion of the disputed language in the Order and having cited the challenged aspect of the Order on several occasions, Enron now concedes in its opposition brief that the language is *dicta*. (Enron Brief at 14)  As *dicta*,

the language is not binding, not properly part of the Court's holding, and should not have been included in the Order.[1]

## II. ARGUMENT

### A.    The Bankruptcy Court's Order Presents A Clear And Immediate Threat To Snohomish's Legal Rights And Therefore Is Properly Justiciable In This Court.

The Bankruptcy Court conceded that it could not enjoin Snohomish's participation in ongoing FERC regulatory proceedings aimed at investigating and developing an appropriate administrative remedy for Enron's long-standing, ubiquitous, and criminally fraudulent schemes to manipulate the wholesale power markets. The Bankruptcy Court nonetheless asserted that it could declare a possible future FERC ruling in a proceeding that is indisputably regulatory "void *ab initio*" because it might relate to the agreement between Enron and Snohomish. The Bankruptcy Court Order presents a clear and immediate threat to Snohomish's legal rights because there is a risk that the Bankruptcy Court, based on the terms of the Order, may attempt to declare relief ordered by FERC in the Partnership and Gaming Proceeding void, despite the fact that FERC is concededly acting in the Partnership and Gaming Proceeding under its regulatory power, has been doing so for more than two years, and despite the fact that Snohomish has participated in FERC's proceedings, at a cost of millions of dollars, since their inception. Moreover, Enron has already repeatedly cited the challenged language in the Order in

---

[1] Enron accuses Snohomish of wanting the *dicta* removed so that it can persuade FERC "to take actions that would improperly infringe on the Bankruptcy Court's jurisdiction." (Enron Brief at 2.) This accusation is completely baseless. The Bankruptcy Court at a hearing held on May 12, 2005 expressly recognized that Snohomish is not acting improperly in the Partnership and Gaming Proceeding. Snohomish requests that the Court, pursuant to Fed R. Evid. 201(b), take judicial notice of that transcript. See *Kaggen v. I.R.S.*, 71 F.3d 1018 (2d Cir. 1995), *B.T. Produce Co. v. Robert A Johnson Sales, Inc.*, 354 F.Supp. 2d 284 (S.D.N.Y. 2004). A true and accurate copy of the transcript from the May 12, 2005 hearing on EPMI's Motion For Limited Modification Of First Amended Order Governing Mediation Of Trading Cases In Light Of Federal Energy Regulatory Commission Orders Issued March 11 And 24, 2005 (with the relevant pages marked) is attached hereto as No. 1. If the Court requires the filing of a formal motion regarding Snohomish's request to take judicial notice of the documents attached hereto, Snohomish will do so promptly.

FERC pleadings in an improper attempt to limit the ambit of FERC's regulatory jurisdiction, threatening immediate prejudice to Snohomish's legal rights. See Snohomish Opening Brief ("Snohomish Brief") at 10-11.

The authorities relied upon by Enron demonstrate that this case is properly justiciable. For example, in *Deposit Guaranty National Bank, Inc. v. Roper,* 445 U.S. 326 (1980) (Enron Brief at 12), the Supreme Court concluded that appeals are properly justiciable as long as an Article III case or controversy exists, notwithstanding that the appellant substantially prevailed below. *Id.* at 332. "In an appropriate case, appeal may be permitted from an adverse ruling collateral to the judgment on the merits at the behest of the party who has prevailed on the merits, so long as the party retains a stake in the appeal satisfying the requirements of Article III." *Id.* at 334.

Similarly, the Supreme Court in *Electrical Fittings Corp. v. Thomas & Betts Co.,* 307 U.S. 241 (1939) (Enron Brief at 12), concluded that where a ruling in favor of an appellant contains a provision that "stands as an adjudication of one of the issues litigated," the appellant is "entitled to have this portion of the decree eliminated" and the appeals court therefore had jurisdiction to entertain the appeal. *Electrical Fittings Corp.,* 307 U.S. at 242. This is the case even where a court has passed on a "hypothetical controversy" where there is "an adverse decision on a litigated issue," and the parties "continue to assert an interest in the outcome of that issue." *Deposit Guarantee National Bank,* 445 U.S. at 335 n.7.

Enron's assertion that the Bankruptcy Court's purported power of review over FERC is mere *dictum* is inconsistent with its assertion that the contested language "is an integral part of the Bankruptcy Court's legal reasoning." (Enron Brief at 5.) If the language at issue was necessary to the Bankruptcy Court's decision, then the authorities Enron relies on make clear that the language is reviewable because it is "essential to" the Bankruptcy Court's judgment. *Bath Iron Works Corp. v. Coulombe,* 888 F.2d 179, 180 (1st Cir. 1989) (*per curiam*). On the other hand, if the language is mere *dictum,* as Enron

also asserts[2] it can have no collateral estoppel effect. *Id.* at 180; *In re Bean,* 252 F.3d 113, 118 (2nd Cir. 2001). Inconsistently, however, Enron has represented the language as having such an effect by repeatedly citing it in pleadings filed at FERC.[3]

     **B.**     **The Bankruptcy Court's Assertion That It Can Declare FERC Action "Void *Ab Initio*" Is An Improper Advisory Opinion.**

The challenged language in the Bankruptcy Court Order is an improper advisory opinion (Snohomish Brief at 12-15), and Enron has no answer to that argument other than the false assertion that the issue of FERC's authority to interpret contracts was fully briefed by the parties below. Yet, the narrow issue before the Bankruptcy Court was, as Enron itself characterized it, whether Snohomish's "specific request for relief," the August 4, 2004 Motion for Clarification before FERC, "violated the automatic stay and [the Bankruptcy] Court's mediation order." (Appellee's Supplemental Appendix, SA 81.) The improper language in the Order addresses a different question involving a contingent future event – a FERC order in the Partnership and Gaming Proceeding that Enron may claim interprets the agreement between the parties or their rights under such agreement.[4] The Bankruptcy Court's assertion that it can declare such an order "void *ab initio*" is plainly an improper advisory opinion.

     **C.**     **The Bankruptcy Court's Assertion Of Jurisdiction To Declare FERC Orders "Void *Ab Initio* " Is Contrary To *Nextwave II*.**

In *Nextwave II,* the Second Circuit took the extraordinary step of granting a writ of mandamus to correct the Bankruptcy Court's "clear and indisputable" error in asserting the "fundamentally mistaken" proposition that it could declare the regulatory action of the FCC "null and void." *Nextwave II*, 217 F.3d at 133-34. Enron's attempt to distinguish *Nextwave II* is without substance.

---

[2] Enron Brief at 13-15.

[3] Enron should withdraw those pleadings.

[4] It is telling that the Bankruptcy Court in denying Enron's motion called it "premature".

Enron asserts that *Nextwave II* involved a regulatory issue (Enron Brief at 24), but that is also true with respect to the Partnership and Gaming Proceeding, including the agreement between the parties to the extent it may be considered therein. The Federal Power Act declares that all contracts involving wholesale electricity in interstate commerce must be just and reasonable, that any contracts that are not just and reasonable are unlawful, and requires FERC to reform unjust and unreasonable contracts. (Snohomish Brief at 16)

FERC's March 11, 2005 ruling,[5] declaring that "Enron's profits under the terminated contracts fall within the scope" of ongoing regulatory proceedings at FERC because the "termination payments are based on profits Enron projected to received under its long-term, wholesale power contracts executed during the period when Enron was in violation of conditions of its market-based rate authority," eliminated any doubt that FERC is proceeding to evaluate Enron's entitlement to "termination payments" under its regulatory power. Accordingly, Enron's attempt to characterize this aspect of the Partnership and Gaming Proceeding as non-regulatory fails, as did similar arguments in *Nextwave II.* See *Nextwave II,* 217 F.3d at 135-136. Even if FERC has improperly asserted its regulatory jurisdiction, Enron's sole avenue for relief lies in the United States Courts of Appeal and the Bankruptcy Court is without jurisdiction to review FERC's determination that it should exercise its regulatory jurisdiction. *Id.* at 135.

For similar reasons, Enron's attempt (Enron Brief at 23-24) to distinguish the Supreme Court's holding in *Board of Governors of Federal Reserve System v. MCorp Financial, Inc.,* 502 U.S. 32 (1991), also fails.[6] In *MCorp,* the Supreme Court held "that

---

[5] *Enron Power Marketing, Inc.,* 110 FERC ¶61,280 (F.E.R.C. Mar. 11, 2005).

[6] Enron's inflammatory assertion that Snohomish is engaged in "forum shopping" (Enron Brief at 2) is absurd. On the contrary, based on Enron's own claims, Snohomish's attempts to call Enron to account for is criminally fraudulent and destructive schemes must proceed at FERC because, in Enron's view, the "filed rate doctrine" bars any action under, for example, RICO and the antitrust statutes. When viewed in this light, it becomes apparent that Enron is improperly attempting to use the Bankruptcy Code as "a haven for wrongdoers." *In re Berry Estates, Inc. d/b/a Blueberry Hill Mgmt. Corp. v. State of New York (In re Berry Estates, Inc.)*, 812 F.2d 67, 71 (2d Cir. 1987).

the automatic stay provisions of the Bankruptcy Code" do not "have any application to ongoing, nonfinal administrative proceedings." *MCorp.* 502 U.S. at 41.  Notwithstanding *MCorp*, the Bankruptcy Court Ordered, "if FERC were to interpret the terms of the Agreement or to determine the rights of the parties under the Agreement, any such action would be void *ab initio*," and it reserved to itself the power to determine how an order of disgorgement would effect Enron's claim and be treated under the Bankruptcy Code. These paragraphs affect the validity of a potential action in an "ongoing, nonfinal administrative proceeding."   In so ordering, the Bankruptcy Court also acted in the manner prohibited by the Supreme Court in *MCorp*.

At the Supreme Court, MCorp argued that, in considering whether the police and regulatory power exception to the automatic stay (§ 362(b)(4)) was applicable, a court must first determine "whether the proposed exercise of power or regulatory power is legitimate."  The Supreme Court, however, expressly rejected this argument:

> We disagree.  *MCorp's* broad reading of the stay provisions would require bankruptcy courts to scrutinize the validity of every administrative or enforcement action brought against a bankrupt entity.  Such a reading is problematic, both because it conflicts with the broad discretion Congress has expressly granted many administrative entities and because it is inconsistent with the limited authority Congress has vested in bankruptcy courts.  We therefore reject *MCorp's* reading of § 362(b)(4).

*MCorp,* 502 U.S. at 40.

Finally, the cases cited by Enron do not support the proposition that the Bankruptcy Court has the authority to declare an order that may be entered by FERC in an ongoing regulatory proceeding void *ab initio*.  In fact, *In re Mirant,* 378 F.3d 511 (5th Cir. 2004), supports Snohomish's position.  In *Mirant*, the Fifth Circuit, like the Second Circuit in *Nextwave II,* concluded that the Bankruptcy Court had no power to enter an injunction "forc[ing] FERC to clear any regulatory action with the bankruptcy court" because such a requirement "is inconsistent with the Bankruptcy Code's assumption that

a debtor is subject to ongoing agency regulation while in bankruptcy." *Mirant,* 378 F.3d at 524.

The challenged language in the Bankruptcy Court's Order here constitutes just such a requirement, i.e., to clear "any regulatory action" through the Bankruptcy Court. In addition, the Fifth Circuit specifically distinguished the contracts it considered in *Mirant* from a case, like this one, involving "ongoing governmental regulatory jurisdiction," specifically noting that its conclusions there would not apply if, as in this case, FERC exercises its power under FPA Section 206(a) to "modify" any rate it finds to be "unjust and unreasonable." *Id.* at 523. Finally, the Fifth Circuit concluded that the Bankruptcy Court's action there "does not conflict with the authority given to FERC to regulate rates for the interstate sale of electricity at wholesale." *Id.* at 510. In contrast, the Bankruptcy Court's assertion that it can declare future FERC action "void *ab initio*" by definition means that there would be a conflict between FERC's conclusions and that of the Bankruptcy Court.

The other cases relied on by Enron, none of which are from this Circuit, do not support a bankruptcy court enjoining possible future action by a federal regulatory agency in an ongoing regulatory proceeding. Those cases do not involve either a federal agency or a statutory scheme assigning exclusive review jurisdiction to the U.S. Courts of Appeal. For example, *Contractor's State License Bd. v. Dunbar (In re Dunbar)*, 245 F.3d 1058, 1063 (9th Cir. 2001), involved Bankruptcy Court preemption of state regulatory agency action on federal Supremacy Clause grounds inapplicable here. *Chao v. Hospital Staffing Services, Inc.*, 270 F.3d 374, 384 (6th Cir. 2002)[7], involved a Fair

---

[7] At most, *Chao* and *In re Corporacion de Servicios Medicos Hosp.*, 805 F.2d 440 (1st Cir. 1986), (*Corporacion* was the sole authority relied upon by the Bankruptcy Court for the language in the Order declaring potential future FERC action void *ab initio*) stand for the proposition that, under certain circumstances, when a government entity acts as a creditor or clearly acts, without any regulatory purpose to benefit one creditor over other creditors, it is not eligible for the police and regulatory exception to the automatic stay. *Corporacion*, which predates *MCorp*, involved a government unit's attempt to enforce its own contractual rights against a debtor for its own financial benefit. FERC in the Partnership and Gaming Proceeding is considering a comprehensive remedy relating to all affected agreements for Enron's market manipulation, market power abuse and collusion.

Labor Standards Act order enforceable in the U.S. District Court; and *Phillips Beverage Co. v Belvedere, S.A.,* 204 F. 3d 805 (8th Cir. 2000), and *Mumford Cove Ass'n, Inc. v. Town of Groton*, 647 F. Supp. 671, 691 (D. Conn. 1986), did not even involve bankruptcy law.

Enron also asserts that FERC sometimes disclaims jurisdiction over state-law contract claims. (Enron Brief at 20-21) This assertion is irrelevant. To begin with, the challenged language in the Bankruptcy Court Order is not limited to state law contract claims; the phrase "state law contract claim" appears nowhere in the decision. Instead, the Bankruptcy Court asserts the authority to render void any FERC action in the Partnership and Gaming Proceeding that "undertake[s] to interpret the terms of the Agreement" or "determine[s] the rights of the parties under the Agreement." (Appellant's Appendix, hereinafter A., A. 306.)

Moreover, it is often necessary for FERC to interpret the terms of wholesale power contacts or determine "the rights of the parties" under such contracts to carry out its obligations of insuring that all wholesale power contracts are just and reasonable, and that wholesale power transactions were conducted in compliance with FERC's tariffs, rules and regulations. In fact, FERC has specifically found that, in some circumstances, "[i]nterpretation of a contract is necessary to determine whether" a regulated entity's "actions do, in fact, constitute violations of the Federal Power Act and our regulations." *Sacramento Mun. Util. Dist. v. Pacific Gas & Elec. Co.,* 37 FERC ¶61,323, at P5 (F.E.R.C. Dec. 30, 1986), *reh'g denied,* 38 FERC ¶61,194 (F.E.R.C. Feb. 25, 1987). Likewise, FERC has asserted its regulatory jurisdiction where the contract rate is asserted to be in excess of just and reasonable rates established by the Commission. *Michigan Wisconsin Pipeline Co.,* 32 FERC ¶61,408 (F.E.R.C. Sep. 19, 1985).

Finally, as the Supreme Court has concluded, once the Commission makes this "initial determination of its jurisdiction" the courts are "obliged to defer" to the Commission with respect to this determination: "While the [agency's] decision is not the

last word, it must assuredly be the first." *FPC v. Louisiana Power & Light,* 406 U.S. 621, 647 (1972). The Bankruptcy Courts, like other courts, must accede to the Commission's jurisdictional determinations. See *In re Goodman,* 873 F.2d 598, 602-03 (2nd Cir. 1989). If FERC errs in asserting its jurisdiction, Enron's sole remedy is to seek review under the statutorily-prescribed procedure in the Courts of Appeal. (Snohomish Brief at 18-20.)

### D.    Enron's Remaining Arguments are Without Merit.

Enron's remaining arguments are equally baseless.[8] First, it contends that the Bankruptcy Court has jurisdiction over all "property of the estate" (Enron Brief at 16-17, 22), suggesting that actions which might impact such property are improper. Yet, the Bankruptcy Court itself rejected this very argument in denying Enron's motion, stating:

> [T]he Court, however, does not accept the Debtor's argument that FERC is precluded from proceeding on the basis that its determination might render the mediation process, and the adversary proceeding, moot. This is because if FERC were acting in its capacity as a regulator, the fact that its enforcement action could affect the Bankruptcy Court's control over property of the estate would not stay such enforcement proceeding as it would be expressly exempted under section 362(b)(4).

(A. 297.)

The Bankruptcy Court reaffirmed this conclusion when it denied EPMI's injunction motion with respect to the portion of a FERC Proceeding commenced by the City of Santa Clara, which sought, *inter alia*, to limit EPMI, as a result of its numerous tariff violations, to charging cost-based rates, noting:

> In instances, however, where FERC is acting in its capacity as a regulator, the fact that is enforcement action could affect the Bankruptcy Court's control over property of the estate would not stay such enforcement proceeding as it would be expressly exempted by Section 362(b)(4). *Board of Governors of the Federal Reserve System v. MCorp Financial, Inc., et al. (in re MCorp Financial Inc., et al.*, 502 U.S. 32, 41, 112 S.Ct.

---

[8]  Snohomish does not argue as claimed by Enron (Enron Brief at 19) that FERC has exclusive jurisdiction over state law contract issues. Enron's contention is a red-herring that is irrelevant to this appeal.

459, 464, 116 L.Ed.2d 358 (1991).  Actions taken by FERC in its capacity
as regulator are not subject to substantive review by a bankruptcy court.

Minute Order on Enron's Motion for an Order Enforcing the Automatic Stay and the

Court's Mediation Order, dated December 29, 2004, at p. 3.[9]

It is also axiomatic that Enron cannot gain title to property it does not otherwise

own simply by declaring bankruptcy.  See *In re Adelphia Communications Corp.,* 298

B.R. 49, 53-54 (S.D.N.Y. 2003) ("Without legal and equitable interest in the proceeds,

Adelphia's estate cannot be ascribed to hold a property interest in those proceeds").  And,

under the clear commands of the FPA, Enron can have no legal claim under a wholesale

power contract until that contract has been properly filed with and approved by FERC,

and Enron has complied with all requirements to maintain its entitlement to that contract.

See *Lockyer v. FERC,* 383 F.3d 1006, 1015 (9th Cir. 2004), *petition for rehearing

pending*.  Enron meets none of these requirements.

Second, Enron also argues that the Bankruptcy Court has the authority to enforce

the automatic stay.  (Enron Brief at 22.)  However, the Bankruptcy Court's general

powers with respect to the stay are not at issue on this appeal.  The relevant issue is the

Bankruptcy Court's right to interfere with an ongoing FERC regulatory proceeding.  As

noted above, the Second Circuit held in *Nextwave II* that "[t]he bankruptcy court lack[s]

jurisdiction to declare the [FCC action] null and void *on any ground*" including the

ground "*that the [FCC action] violated the automatic stay.*"  *Nextwave II*, 217 F.3d at

139 (emphasis added).

Third, Enron cites decisions in which motions to withdraw reference asserting

state law claims were denied.  (Enron Brief at 20-21.)  These cases are irrelevant here

because the ongoing FERC proceeding involves only issues of federal regulatory law.  In

any event, even where simple common law claims are pled, resolution of the dispute by

FERC may be necessary or desirable because electricity contracts "are creatures of the

---

[9]   A true and correct copy of the Minute Order is attached hereto as No. 2 and the Court is requested to
take judicial notice thereof (see n.1).

complex arena of federal energy regulation" and interpretation may "cause the court to delve into a highly technical area that is fraught with dangers and pitfalls for the uninitiated." *New York State Elec. & Gas Corp. v. New York Indep. System Operator, Inc.,* 168 F. Supp. 2d 23, 27 (N.D.N.Y. 2001). Where FERC exercises its jurisdiction to reach such claims, Enron's sole avenue for relief is in the appropriate Courts of Appeal, and the Bankruptcy Court abused its power in asserting a right to review and declare void FERC orders.

### III. <u>CONCLUSION</u>

The Bankruptcy Court should have entered an order that simply denied Enron's motion to stay the Clarification Request, as submitted by Snohomish. Instead, the Bankruptcy Court erred by issuing an Order that went well beyond the issues raised in the motion and that improperly declared possible future – and as yet unknown – actions by FERC in an ongoing regulatory proceeding void *ab initio*. Enron immediately began citing the Order in FERC pleadings highlighting that there is a live controversy about the language of the Order notwithstanding the fact that Snohomish prevailed on the motion.

Snohomish respectfully requests that the Court strike those provisions in the Order which go beyond a simple denial of Enron's motion.

Dated:      Seattle, Washington
             May 27, 2005

Michael A. Goldfarb (MG 6497)
LAW OFFICES OF MICHAEL A. GOLDFARB
1150 Market Place Tower
2025 First Avenue
Seattle, Washington 98121
(206) 374-7090

and

Alan E. Gamza (AG 2014)
Philippe Zimmerman (PZ 7744)
MOSES & SINGER, LLP
1301 Avenue of the Americas, 40th Floor
New York, New York 10019-6076
(212) 554-7800

Eric. L. Christensen
Assistant General Counsel
PUBLIC UTILITY DISTRICT NO. 1 OF
SNOHOMISH COUNTY, WASHINGTON
2320 California Street
Everett, Washington 98206
(425) 783-8649

Attorneys for Public Utility District No. 1 of
Snohomish County, Washington

# NO. 1

1

1
2

UNITED STATES BANKRUPTCY COURT
3    SOUTHERN DISTRICT OF NEW YORK
------------------------------x
4    In re

                              Case No.
5                             01-16034
     ENRON CORP., et al,      (02-2520)
6                             *SEE BELOW
               Debtors.
7    ------------------------------x
               May 12, 2005
8              9:02 a.m.
9              United States Custom House
               1 Bowling Green
10             New York, New York   10004
11        (Proceedings -- Entire Day)
12   9:00 01-16034 ENRON CORP., ET AL
     (02-2520) Enron Power Marketing, Inc. v.
13   Nevada Power and Sierra Pacific Power
     Company:
14
     Discovery Conference.
15
     10:01 01-16034 ENRON CORP., ET AL
16   (03-93372) Houston Pipe Line Company, LP, et
     al v. Enron Corp., ENA Asset Holdings, LP, et
17   al:
18   Discovery conference.
19   10:15 01-16034 ENRON CORP., ET AL
     (04-3099) Enron Wind Energy Systems, LLC, et
20   al v. Marathon Electric Manufacturing
     Corporation:
21
     Pre-motion conference
22
     B E F O R E:
23
        THE HONORABLE ARTHUR J. GONZALEZ
24      United States Bankruptcy Judge
25

```
 1
 2    Calendar:   (continued)
 3    11:15 01-16034 ENRON CORP., ET AL
      (04-4734) Enron Energy Marketing Corp. v.
 4    A.M. Realty Management, Inc.:
 5    Motion filed by Enron Energy Marketing Corp.
      seeking an order compelling compliance with
 6    the Court's order governing procedures for
      and mediation of certain debt declaratory
 7    judgment cases and for civil contempt
      sanctions.
 8
      11:45 01-16034 ENRON CORP., ET AL
 9
      Motion by Debtors to approve settlement
10    agreement between Enron Energy Services, Inc.
      and Cypress Semiconductor Corporation.
11
      11:45 01-16034 ENRON CORP., ET AL
12
      Motion by Debtors for approval of settlement
13    agreement between Enron Energy Services,
      Inc. and Clinic Investment, LLC.
14
      11:45 01-16034 ENRON CORP., ET AL
15
      Motion by Debtors for approval of settlement
16    agreement between Enron Energy Services,
      Inc. and Heraeus, Inc.
17
      11:45 01-16034 ENRON CORP., ET AL
18
      Motion by Debtors for approval of settlement
19    agreement among Enron North America Corp.,
      Smurfit Packaging Corporation, and Smurfit
20    Packaging Corporation Limited.
21    01:00 01-16034 ENRON CORP., ET AL
      (02-2719) Enron Power Marketing, Inc. v.
22    City of Santa Clara:
23    Motion filed by Debtors for limited
      modification of first amended order governing
24    mediation of trading cases in light of
25
```

5

1
2    Calendar:   (continued)
3    Federal Energy Regulatory Commission orders
     issued March 11 and 24, 2005.
4
     Objection of the City of Santa Clara filed.
5
     01:00 01-16034 ENRON CORP., ET AL
6    (03-2064) Enron Power Marketing, Inc. v.
     Public Utility District No. 1 of Snohomish
7    County:
8    Motion by Debtors for limited modification
     of first amended order governing mediation
9    of trading cases in light of Federal Energy
     Regulatory Commission orders issued March 11
10   and 24, 2005.
11   Joinder by Public Utility Distrit No. 1 of
     Snohomish County to objections.
12
     01:00 01-16034 ENRON CORP., ET AL
13   (03-2107) Enron Power Marketing, Inc. v.
     Valley Electric Association, Inc.:
14
     Motion by Debtors for limited modification
15   of first amended order governing mediation
     of trading cases in light of Federal Energy
16   Regulatory Commission orders issued March 11
     and 24, 2005.
17
     Objection of Valley Electric Association,
18   Inc. filed.
19   01:00 01-16034 ENRON CORP., ET AL
     (04-2968) Enron Power Marketing, Inc. v.
20   Metropolitan Water District of Southern
     California:
21
     Motion by Debtors for limited modification
22   of first amended order governing mediation
     of trading cases in light of Federal Energy
23   Regulatory Commission orders issued March 11
     and 24, 2005.
24
25

1
2   Calendar:    (continued)
3   Objection by Metropolitan Water District of
    Southern California filed.
4
    01:00 01-16034 ENRON CORP., ET AL
5
    Motion filed by Enron Power Marketing Inc.
6   for limited modification of first amended
    order governing mediation of trading cases
7   in light to Federal Energy Regulatory
    Commission orders issued March 11 and 24,
8   2005.
9   Objections filed.
10  01:40 01-16034 ENRON CORP., ET AL
    (02-3542) Enron North America Corp. v. The
11  American Coal Company:
12  Motion by Defendant to allow discovery and
    any matter relating to discovery to proceed.
13
    Opposition by Plaintiff filed.
14
    02:10 01-16034 ENRON CORP., ET AL
15
    Debtors' objection to proofs of claim filed
16  by Bear, Stearns & Co., Inc., et al (claim
    nos. 22634 and 22635).
17
    Response by Bear Stearns filed.
18
    02:40 01-16034 ENRON CORP., ET AL
19
    Motion by Debtors for approval of settlement
20  between Enron Power Marketing, Inc., Enron
    Energy Services, Inc. and Morgan Stanley
21  Capital Group, Inc.
22  02:45 01-16034 ENRON CORP., ET AL
23  Motion filed by the Debtors for entry of an
    order consolidating the avoidance actions
24  subject to the November 18, 2004 and December
25

```
 1              Proceedings

 2   would be pleased to answer them.  Otherwise,

 3   I have orders and I am certainly prepared to

 4   hand them up to the Court.

 5              JUDGE GONZALEZ:  Does anyone else

 6   wish to be heard?

 7              (Whereupon, no response was heard.)

 8              JUDGE GONZALEZ:  No further comment

 9   being heard, based upon the pleadings as

10   filed and the representations made on the

11   record and no opposition having been

12   interposed, I will grant the relief

13   requested.  You may hand up the orders

14              MR. FLECK:  Thank you, Your Honor.

15              JUDGE GONZALEZ:  I will terminate

16   the call.  The next matter begins at 1:00.

17              (Whereupon, from 11:59 a.m. to 1:04

18   p.m. a recess was taken.)

19              JUDGE GONZALEZ:  Please be seated.

20              Enron, the Debtors' motion.

21              MR. ELLENBERG:  If the Court

22   please, Mark Ellenberg from Cadwalader

23   Wickersham & Taft on behalf of the

24   Reorganized Debtors.

25              Your Honor, we are here today on
```

1                    Proceedings

2       the Reorganized Debtors' motion for a limited

3       modification of the mediation order.  We wish

4       to modify the order to permit litigation in

5       this Bankruptcy Court to proceed against four

6       counterparties.  Each of those counterparties

7       is active in the Gaming and Partnership

8       Proceeding at FERC, and each is covered by

9       two recent orders by FERC.  One is deciding a

10      motion for a clarification and the other is

11      concerning discovery.

12              This motion is not to determine

13      these or any other mediations that are taking

14      place under the mediation order.  Indeed, we

15      have a session scheduled with Santa Clara for

16      Monday, and as far as we are concerned that

17      is going forward.

18              The purpose of the motion is to

19      enhance the prospects for a successful

20      mediation with each of these parties.  What

21      has happened now and what requires relief

22      from this Court is that the litigation risks

23      that the parties are confronting have become

24      severely out of balance.  They have become

25      out of balance, because these four parties

```
 1                 Proceedings

 2     are actively litigating with FERC on issues

 3     that directly relate to the adversary

 4     proceedings in this Court and more

 5     particularly at least they believe it will

 6     free them of the obligation to make the

 7     termination payments that Enron is seeking to

 8     obtain a judgment for before this Court.

 9             It is not a symmetrical situation.

10     EPMI cannot obtain a judgment in the FERC

11     litigation.  The best EPMI can do is avoid an

12     order that undercuts the relief it is trying

13     to get in this litigation.  The potential for

14     FERC bailout, as it were, that these four

15     parties perceive to exist has significantly

16     undercut their motivation to settle these

17     cases, and, indeed, they can wait to see what

18     FERC does with absolutely no cost.  The

19     waiting process is free of any cost to them,

20     because nothing is happening in this forum.

21             Permitting EPMI to pursue its

22     claims in this Court will restore balance,

23     while the parties would be waiting for FERC.

24     If the mediation order is modified, they

25     would also be conducting litigation in this
```

```
 1              Proceedings
 2   Court and would face the prospect of an
 3   adverse judgment in this Court.  That
 4   prospect will attach a cost to their waiting,
 5   a cost which does not now exist.
 6          In addition, FERC has even
 7   alleviated these four parties from the cost
 8   of uncomfortable discovery in the FERC
 9   Proceeding.  For example, we believe that
10   discovery would show that Snohomish purchased
11   more power than it needed to service its
12   load, and that it had a strategy to profit
13   from the reselling of that power in the
14   market.  We think that that strategy
15   undercuts their claims of fraud in the
16   inducement and undercuts in general their
17   ability to ask this Court for equitable
18   relief.
19          FERC has not permitted us to probe
20   this area.  FERC has concluded that the FERC
21   Proceeding is only about Enron's conduct and
22   not about the other parties' conduct, because
23   FERC believes that the only relief that is
24   given is one which punishes Enron for
25   violating tariffs and not one which is
```

```
 1              Proceedings
 2   related to actual harm that the other parties
 3   have suffered.  Thus, they have upheld the
 4   objections of these four counterparties to
 5   those types of discovery in the FERC
 6   Proceeding.
 7              The point is not as the parties
 8   seem to suggest in the oppositions that we
 9   are appealing from FERC's discovery ruling in
10   this Court.  We are not doing that.  The
11   point is that FERC has further eliminated any
12   risk at any cost to the counterparties for
13   simply permitting the FERC Proceeding to play
14   out, because it has protected them from what
15   would unquestionably be uncomfortable
16   discovery.
17              The mediation order, Your Honor,
18   was intended to stop all litigation and
19   thereby channel all of the parties' energies
20   into the mediation process.  Similar to what
21   the exclusive period does, it forces
22   creditors to deal with the Debtor with the
23   hopes of reaching a consensual plan.  What
24   has happened now is that the parties are no
25   longer bottled up.  These four parties have a
```

```
 1              Proceedings
 2   place in which to vent their litigation
 3   energies.  We tried to stop this.  We came to
 4   Your Honor and we asked to enjoin these
 5   parties from proceeding with their motion for
 6   clarification, which is the vehicle by which
 7   they injected into the FERC proceeding the
 8   issue of the termination payments under these
 9   contracts.
10           Your Honor denied our motion, and
11   Your Honor denied it because you could not be
12   sure how far FERC was going to go in the
13   relief that it was going to award.  Your
14   Honor observed that there might be an area of
15   relief that was within FERC's exclusive
16   jurisdiction, and there might be some relief
17   in addressing these contracts that would be
18   beyond FERC's jurisdiction.  But you couldn't
19   tell at that time how far FERC was going to
20   go and, therefore, you would not enjoin what
21   they are doing.
22           Your Honor, if we can't stop what
23   they are doing at FERC, then we have to start
24   activity in this Court.  It is the only way
25   we can restore balance incentives for
```

```
 1              Proceedings
 2    settlement in this case.
 3              As Your Honor knows, Enron did not
 4    ask for the mediation order.  This Court
 5    imposed it sua sponte.  Enron nonetheless has
 6    embraced the mediation order.  We faithfully
 7    adhere to the mediation order.  Indeed, we
 8    have settled to date 68 percent of the cases
 9    in which we have had at least one mediation
10    session with a counterparty.  The problem,
11    Your Honor, is that it takes two to tango and
12    it takes two to settle.
13              The parties we have settled with, a
14    large number of them for a large amount of
15    money, have been channeled exclusively to
16    mediation, and accordingly they have engaged
17    in good faith and serious negotiations.
18              JUDGE GONZALEZ:  Have you advised
19    Judge Gropper of the request that you were
20    going to make?
21              MR. ELLENBERG:  Yes, Your Honor.
22    Unlike Dynegy, which I was going to get to,
23    we are not asking to terminate the mediation.
24    We did not think this was a situation where
25    we needed to obtain his view as to whether
```

1                    Proceedings

2      the mediation should be terminated, but we

3      did advise him prior to filing the motion

4      that we were going to file the motion.

5              JUDGE GONZALEZ:  All right.

6              MR. ELLENBERG:  So, Your Honor, the

7      problem we have is that these four parties,

8      because of the FERC proceedings, have a lack

9      of any cost to delaying in this forum, lack

10     the incentive to settle.  This is not bad

11     faith.  They are being entirely rational.

12     The problem is that the FERC litigation has

13     perverted the incentive that mediation order

14     and that the stay of discovery in the

15     mediation order was supposed to create.

16              As I said, Your Honor, we are very

17     mindful of the Dynegy ruling.  We are not

18     seeking to terminate any mediation, let alone

19     these four mediations.  We believe that we

20     are being entirely consistent in that in both

21     instances our goal was to fortify the

22     mediation process and to increase the

23     prospects for mediated settlements, not to

24     decrease them.  The mediation order, Your

25     Honor, expressly permits the Debtors to seek

```
 1              Proceedings
 2    its modification, and that is why we are
 3    here.
 4              I think, Your Honor, at the end of
 5    the day, the best argument in favor of
 6    granting this motion is that each of the four
 7    counterparties are here opposing it.  They
 8    filed hundreds of pages of documents and
 9    pleadings to try and preserve the status quo.
10    Why are they so insistent on preserving the
11    status quo?  Why has each one of them shown
12    up here?  Why are they here?  Why are they
13    going to this trouble?  Is it because they
14    care about the integrity of the mediation
15    process?  Is it because they are really
16    concerned about chaotic discovery demands?
17              By the way, Your Honor, we are not
18    asking you to do anything different than what
19    we are doing in Nevada Power.  Nevada Power
20    was somewhat ahead of the mediation order.
21    There was a summary judgment motion in Nevada
22    Power.  It was decided.  There are follow on
23    proceedings, of which Your Honor is well
24    aware.  There has been discovery.  The world
25    has not come to an end.  We are not asking to
```

1                    Proceedings

2      do anything different with these parties.

3              So, again, why are they here?  They

4      are here, Your Honor, because they understand

5      that the status quo gives them the best of

6      all possible worlds.  It is a world in which

7      they have a risk-free shot at escaping

8      liability at FERC, while incurring absolutely

9      no cost for delaying this Court and for

10     dragging their feet in the mediation process,

11     and drag their feet, they have, Your Honor.

12     We made an offer to Santa Clara last July.

13     We still haven't gotten a response to it.

14             They complain about a potential

15     race between this Court and FERC, and say

16     that is to be avoided.  But why isn't there a

17     race at this time, if that is the right word?

18     It is only because this Court sua sponte

19     imposed in effect a stay on itself by staying

20     the proceedings in this Court.

21             Had the parties moved for an

22     injunction like that, they never would have

23     received it.  They wouldn't have received it

24     in a million years.  Yet it has been handed

25     to them for free, like manna from heaven, and

1                      Proceedings

2     they don't want to let go of it.  That is why

3     they are here, Your Honor.  That is why each

4     one of them is going to get up and talk

5     endlessly to try and preserve the status quo.

6               Your Honor, they are smirking at

7     us.  They are smirking at Judge Gropper, and

8     I believe they are smirking at this Court.

9     That is why this relief should be granted.

10              JUDGE GONZALEZ:  Does any of the

11    opposition wish to be heard?

12              MR. DUVER:  Good afternoon, Your

13    Honor.  My name is Theodore Duver from

14    Harkins Cunningham LLP, and I am here on

15    behalf of Metropolitan Water District of

16    Southern California.

17              Your Honor, Enron has stated that

18    its motives are to protect the sanctity of

19    the mediation process and to protect the

20    sanctity of this Court's jurisdiction over

21    the adversary proceedings in its estate.

22    However, that is not what its motives are.

23    It is not to champion those causes, and no

24    better evidence exists on that point than

25    looking at the facts and circumstances

1    Proceedings

2    surrounding the Metropolitan Water District.

3    This is a claim for $1.28 million.

4    Metropolitan Water District has not taken an

5    active role filing numerous discovery

6    requests and burdening Enron to turn over

7    documents in, as they call it, one-sided

8    litigation at the FERC. Metropolitan is

9    merely an intervenor at the FERC, making sure

10   that it can protect its rights and its

11   interests in that forum.

12   Also, Metropolitan on two previous

13   occasions has engaged in informal settlement

14   discussions with counsel for EPMI, and the

15   parties were present, in order to see if a

16   resolution can be achieved. In both

17   instances, those informal settlement

18   discussions came after a request by Enron to

19   cancel the mediation that we had scheduled

20   with Judge Gropper. Metropolitan isn't

21   running away from anything.

22   Metropolitan has a small claim

23   here. What Enron is trying to do is to

24   create the appearance that it is not trying

25   to terminate the stay, but that it wants to

```
 1              Proceedings
 2    continue to engage in these discussions and
 3    negotiations, when, in fact, what they are
 4    doing is they are creating an inefficient and
 5    coercive race in order to try to back
 6    Metropolitan into a wall and say, "You had
 7    better settle this, because we are the big
 8    guys here.  We can run up litigation expenses
 9    for you, and then you are just going to have
10    to settle."
11              JUDGE GONZALEZ:  What would you
12    have done if there was never a mediation
13    order?  What do you think the landscape would
14    look like today?
15              MR. DUVER:  Your Honor, if there
16    wasn't a mediation order, there are avenues
17    for seeking FERC action.  There is the
18    doctrine of primary jurisdiction.  If there
19    wasn't a mediation order in place, motions
20    could have been filed with this Court to ask
21    this Court to step aside and to wait until
22    there is final resolution of the FERC
23    Proceeding.
24              JUDGE GONZALEZ:  You could do that
25    now, if I were to lift the stay.  As imposed
```

1            Proceedings

2   under the mediation order, what rights of

3   yours would then have been lost?

4            MR. DUVER:  If Your Honor were to

5   lift the mediation stay and give the right to

6   the parties to file those motions, well, then

7   obviously the parties would take and

8   Metropolitan would take whatever

9   opportunities it had to protect its rights.

10  However, then that goes against exactly what

11  Enron is saying in this particular

12  instance -- that it is more interested in

13  sitting down and mediating while its

14  counterparties are more interested in running

15  away from mediation.

16           JUDGE GONZALEZ:  Is it possible

17  then that by not lifting the stay and not

18  allowing those kinds of issues, and when I

19  say "those kinds of issues," the issue of

20  primary versus concurrent jurisdiction, to be

21  resolved by this Court, am I creating an

22  atmosphere within which de facto FERC is able

23  to make that determination instead of this

24  Court?  For example, and I think we can look

25  at Nevada Power, it seems to me that -- and I

1                     Proceedings

2    may be incorrect about my recollection -- in

3    this area it is up to this Court to determine

4    whether something is primary, concurrent, et

5    cetera, and then under the proper

6    circumstances defer to FERC.  I think I

7    mentioned this in the Nevada Power decision,

8    and I think it may have come up in a decision

9    with one of the parties before me today, to

10   the extent FERC in its action violates the

11   automatic stay, that determination in my view

12   would be void ab initio.

13             So in a way, if there is a need of

14   some balance to go on here and it seems to me

15   that there may be this imbalance present.

16   Now, going back to the original motion to

17   stay what was going on before the FERC, I

18   denied that and I would deny it again today

19   because I don't think that is the proper

20   approach.  The proper approach may well be to

21   have the issues brought and have them

22   litigated and resolved one way or the other,

23   and whatever appeals are taken from the

24   appropriate Court that is obviously the

25   parties' right to do.  But I am not so sure,

```
 1              Proceedings
 2    waiting now and holding back and not making a
 3    determination doesn't result in the normal
 4    course that this Court would pursue in making
 5    the determination as to whether an action is
 6    primary jurisdiction, concurrent
 7    jurisdiction, et cetera, whether or not by
 8    holding off and making that determination
 9    really has any value?
10              MR. DUVER:  If I understand your
11    comments correctly, Your Honor is phrasing
12    this in terms of whether to terminate the
13    stay in this particular instance in order to
14    allow the motions to be filed.  However, the
15    motion that was filed by Enron here today was
16    not filed as to every single counterparty
17    that may have entered into a contract if they
18    had a pending adversary proceeding before
19    this Court.  It is clear that the motion was
20    designed to actually address four parties and
21    the parties that have come before Your Honor,
22    and I submit to this Court that it would be
23    inefficient to do a selective termination
24    where some parties move forward and other
25    parties not move forward in this manner and
```

| 1 | Proceedings |
| 2 | have Your Honor -- |
| 3 | JUDGE GONZALEZ:  But who would it |
| 4 | be inefficient to?  It seems to me that that |
| 5 | is an argument that would be raised by a |
| 6 | party who is not involved here today.  If it |
| 7 | were raised by the Court, if I thought it was |
| 8 | an inefficient use of my time, I am not sure |
| 9 | that that is necessarily an argument that |
| 10 | would normally be advanced by those parties |
| 11 | that are the subject of this kind of request |
| 12 | for relief. |
| 13 | MR. DUVER:  Your Honor, essentially |
| 14 | what Metropolitan's position here today is |
| 15 | that we have a system in place, a system that |
| 16 | Enron has stated has worked.  They have taken |
| 17 | the position they have been able to move |
| 18 | forward and mediate.  So the position that |
| 19 | Metropolitan would take is that, yes, the |
| 20 | system that Your Honor has currently put in |
| 21 | place will allow the parties to continue to |
| 22 | have discussions.  I submit to this Court |
| 23 | that the litigation imbalance that Enron |
| 24 | claims justifies lifting the stay as to |
| 25 | Metropolitan does not exist, particularly |

```
 1              Proceedings
 2    when you have a party that has a small claim
 3    pending against it that has not taken an
 4    active role by any stretch of the imagination
 5    at the FERC in order to seek a remedy at the
 6    FERC, but is passively engaged at that
 7    agency, and that weakens and I submit shows
 8    that there is no basis that Enron has offered
 9    to lift the mediation stay.
10              JUDGE GONZALEZ:   Thank you.
11              Is there anyone else?
12              MR. GOLDFARB:   Your Honor, Michael
13    Goldfarb for Snohomish.   I am going to scrap
14    prepared remarks, because it is clear that
15    Your Honor has considered this issue.   I want
16    to just speak directly to Your Honor's
17    question with regard to primary jurisdiction,
18    because it seems to me that that is really
19    the essence of the discussion.
20              The difficulty here, Your Honor, is
21    that until FERC issues its ruling, how is
22    this Court going to know whether what FERC
23    has done is within its exclusive jurisdiction
24    or within its concurrent jurisdiction.
25              Our view of the world is and it has
```

```
 1              Proceedings

 2   been confirmed I think thus far by rulings of

 3   this Court is that FERC in its Gaming and

 4   Partnership Proceedings is proceeding within

 5   its exclusive jurisdiction.  If and when FERC

 6   rules on those issues, Your Honor will have

 7   something substantial before you that would

 8   allow you to decide.  But on the record that

 9   is presented today, how can the Court make a

10   definitive decision one way or another?  My

11   understanding of Your Honor's ruling on the

12   stay issues that were here at the holiday

13   season was that it wasn't fully clear at that

14   time what the scope of the clarification

15   request was, and for that reason the Court

16   could not see whether or not there would be

17   any violation of this Court's jurisdiction.

18              That situation still continues to

19   exist today, and it is going to exist and

20   continue to exist until FERC issues some kind

21   of a ruling.  When Your Honor has that

22   package before you, then Your Honor will be

23   able to tell exactly what it is that FERC has

24   done and make some kind of a ruling.  The

25   problem when you are talking about balance,
```

```
 1              Proceedings
 2   Your Honor, is that because what is going on
 3   at FERC is not concurrent, if it was
 4   concurrent, there would be a notion that
 5   there are two proceedings and you would
 6   balance them.  What is happening at FERC is
 7   threshold, because what FERC is doing now is
 8   examining the basic underpinnings of Enron's
 9   ability to enter globally into any of these
10   contracts, because of its conduct within that
11   market, matters that are within FERC's
12   exclusive jurisdiction.  Until FERC decides
13   those threshold issues, there is really
14   nothing there for this Court to determine.
15   Has something happened at FERC that this
16   Court might perceive to be too far invades
17   upon the Court' jurisdiction, which
18   respectfully, Your Honor, you can get there
19   today.  If you were to have us brief it, I
20   think it would be very difficult for the
21   parties to shape that issue for Your Honor,
22   because unlike some other cases that are
23   pending before this Court, the issues are
24   much less defining.
25              Thank you, Your Honor.
```

1                    Proceedings

2                    JUDGE GONZALEZ:  Is there anyone

3    else?

4                    MR. TURNER:  Paul Turner for Valley

5    Electric, may it please the Court.  I will be

6    brief.  I wanted to essentially just make two

7    quick points.

8                    One is Valley has been involved in

9    both the FERC proceedings and this

10   proceeding.  It is a small electric rural

11   cooperative of Nevada.  Initially it was

12   involved in the FERC proceedings, because

13   they were the subject of the investigation

14   itself.  It is facing some fairly heavy

15   burdens, and we think that by lifting the

16   stay that those burdens would increase

17   without sort of concurrent efficiencies.

18                    You had asked the questions

19   specifically what kinds of additional burdens

20   would the parties face, or something to that

21   effect, and I guess the way I look at it is

22   if the stay is lifted here and the parties

23   start down the litigation track.  At least

24   you have had your discovery depositions and

25   expert witnesses on forward curves on

1                    Proceedings

2    valuation and those sorts of things, then you

3    later get a FERC order that talks about the

4    rate remedies in the FERC order and

5    imposition of cost-based rates or

6    disgorgement of unjust profits, then you do

7    have a very significant number of issues that

8    both the parties, the estate, Valley and this

9    Court that is sort of expended and there

10   seems really to be very little.  Those become

11   essentially a waste and the parties have to

12   sort of backtrack and sort of relook at

13   related issues, depending on the FERC ruling.

14   So I just wanted to make that a bit more

15   concrete.

16            JUDGE GONZALEZ:  All right.  Thank

17   you.

18            MR. GAMZA:  Good afternoon, Your

19   Honor.  Alan Gamza from Moses & Singer.  I am

20   counsel for Santa Clara and co-counsel for

21   Snohomish.

22            Your Honor, I am addressing the

23   Court now as counsel for Santa Clara.  I will

24   attempt to be brief, Your Honor, since there

25   were extensive written submissions provided

```
 1              Proceedings
 2    to the Court.
 3           First, Your Honor, as addressed at
 4    length in the objection of Santa Clara and I
 5    believe some of the other objections, the
 6    Gaming and Partnership Proceeding does not
 7    interfere with this Court's jurisdiction, and
 8    EPMI's claim that the stay must be terminated
 9    to protect the Bankruptcy Court's
10    jurisdiction does not withstand scrutiny.  We
11    ought to just take that one off the table,
12    Your Honor.
13           It is pretty clear based on FERC's
14    rulings, this Court's rulings, the testimony
15    filed in the Gaming and Partnership
16    Proceeding, that that proceeding is focused
17    on FERC's exclusive regulatory jurisdiction.
18    It is not dealing with the contract issues.
19    FERC is considering a remedy, not a
20    punishment, and is considering --
21           JUDGE GONZALEZ:  You mean legal
22    conclusions in that argument?  When you say
23    FERC is considering a remedy and not a
24    punishment, I am not prepared to rule, if it
25    were before me, one way or the other what
```

```
 1              Proceedings
 2    FERC may be doing, but that still is at the
 3    argument stage at this point as to whether
 4    that is a punishment or remedy.
 5              MR. GAMZA:  Your Honor, I
 6    appreciate that.  I don't think that is an
 7    issue for today, but I think the word
 8    "punishment" was used earlier by counsel for
 9    Enron and I did want to address that.
10              I believe that argument by EPMI is
11    a red herring.  They are ignoring numerous
12    court orders, specifically they are ignoring
13    the language in FERC's March 11th order,
14    which said expressly that it was subject to
15    applicable bankruptcy restrictions.  In fact,
16    Enron has argued in the Snohomish appeal that
17    that means that FERC recognizes that the
18    issues must be resolved by the Bankruptcy
19    Court, not FERC, at least certain issues.  So
20    I think it is a bit disingenuous to say in
21    one pleading that, subject to applicable
22    bankruptcy restrictions, recognizes the
23    jurisdictional limit of FERC, and then to
24    argue to this Court that the Gaming and
25    Partnership Proceeding is interfering with
```

```
 1                Proceedings
 2    this Court's jurisdiction and such
 3    jurisdiction must be protected.
 4           Second, Your Honor, Santa Clara and
 5    the other parties' participation in the
 6    Gaming and Partnership Proceeding is not an
 7    appropriate basis to terminate the mediation
 8    stay.  It is not proper to punish such
 9    parties for simply protecting their rights in
10    an ongoing regulatory proceeding.
11           It should be noted, Your Honor,
12    Santa Clara did not intervene in the Gaming
13    and Partnership Proceeding until very late in
14    the process, until it became clear following
15    FERC's July 2004 order that it needed to
16    participate in order to protect its rights.
17    Up until that point, Santa Clara was not a
18    party to the Gaming and Partnership
19    Proceeding.
20           Punishing these parties for
21    participating is particularly true in light
22    of the fact that Santa Clara has not sought
23    any independent discovery in the Gaming and
24    Partnership Proceeding.  Enron has presented
25    no evidence that their participation is
```

1                    Proceedings

2    interfering with the mediation involving such

3    parties.  I know they have made argument, but

4    they have presented absolutely no evidence.

5    As I will get to in a little bit, Your Honor,

6    simply pointing out to the Court that the

7    adversary proceedings involving these parties

8    have not settled does not in any way

9    demonstrate that the Gaming and Partnership

10   Proceeding is interfering on their

11   participation.

12            Also, Your Honor, Judge Gropper has

13   not indicated that we are aware of that the

14   Gaming and Partnership Proceeding is in any

15   way interfering with the mediation involving

16   Santa Clara, or that Santa Clara as a result

17   of such proceeding has not fully participated

18   in the mediation in good faith.

19            Your Honor, I think the fallacy of

20   Enron's argument is demonstrated when you

21   take a step back and you look at the fact

22   that even if the Gaming and Partnership

23   Proceeding were not going forward, the

24   parties' regulatory defenses would need,

25   nevertheless, to be taken into account in

```
 1                    Proceedings
 2   resolving these cases.  They cannot be
 3   ignored.
 4              JUDGE GONZALEZ:  Why don't you want
 5   to go forward, though?  Are you saying that
 6   you think the mediation is that effective
 7   that you want to continue it, or do you think
 8   you will continue it under the terms and
 9   conditions in which it is currently moving
10   forward?
11              MR. GAMZA:  Your Honor, I know that
12   Enron has made a point of stating that they
13   are not seeking to terminate the mediation.
14   That they are simply seeking to terminate the
15   mediation stay, and that the mediation will
16   continue to go forward.  Your Honor, whatever
17   ruling the Court makes on this motion, Santa
18   Clara will continue to participate in good
19   faith.  But we don't believe that the reality
20   is that the mediation stay can be terminated
21   without interfering with the mediation.
22   These are complicated litigation issues.
23              JUDGE GONZALEZ:  That is the part I
24   don't understand.  I understand that it may
25   impact the mediation, but impacting the
```

| | |
|---|---|
| 1 | Proceedings |
| 2 | mediation is not necessarily improper.  I |
| 3 | mean, there are a lot of things that impact |
| 4 | the mediation, and those are the dynamics of |
| 5 | what happens when people have rights and |
| 6 | there are things that impact the strengths |
| 7 | and weaknesses of their cases.  What I am |
| 8 | trying to understand is how at this stage |
| 9 | granting the relief requested is somehow, I |
| 10 | will use to word "improper," in the context |
| 11 | of the dynamic of the relationship between |
| 12 | the parties?  How is your client going to be |
| 13 | improperly disadvantaged?  I don't doubt that |
| 14 | someone may be disadvantaged, but that |
| 15 | doesn't necessarily mean it is wrong. |
| 16 | MR. GAMZA:  First, Your Honor, I do |
| 17 | think that while this Court imposed the stay |
| 18 | and this Court has the power to terminate it, |
| 19 | I do think it is improper to terminate it |
| 20 | because Santa Clara has participated in a |
| 21 | regulatory proceeding to protect its rights. |
| 22 | I don't believe that that would be a proper |
| 23 | reason to terminate the stay. |
| 24 | JUDGE GONZALEZ:  That is precisely |
| 25 | what I am trying to get at.  It seems to me |

| 1 | Proceedings |
| 2 | that Santa Clara has every right in the world |
| 3 | to participate in that proceeding, but in |
| 4 | exercising that right, it doesn't necessarily |
| 5 | mean that Enron doesn't have a right to try |
| 6 | to go forward with what it considers its |
| 7 | rights, as opposed to having them stayed and |
| 8 | relegated to the arguments that are made at |
| 9 | mediation.  So no one is questioning or, at |
| 10 | least, I don't hear anybody questioning, and |
| 11 | I am certainly not questioning Santa Clara's |
| 12 | or any other parties' rights to go to FERC |
| 13 | and protect their interests.  That is not |
| 14 | really the issue before me.  The issue before |
| 15 | me is having done that, should Enron continue |
| 16 | to be restrained in proceeding before this |
| 17 | Court? |
| 18 | MR. GAMZA:  But, Your Honor, Enron |
| 19 | is only seeking to terminate the mediation |
| 20 | stay with respect to the four parties that |
| 21 | are here who have protected their rights at |
| 22 | FERC in the Gaming and Partnership |
| 23 | Proceeding.  They are not seeking to |
| 24 | terminate the mediation stay with respect to |
| 25 | other parties, including those other parties |

```
 1                   Proceedings
 2   who may benefit from relief granted by FERC
 3   in the Gaming and Partnership Proceeding.
 4              JUDGE GONZALEZ:  What is the
 5   relevance of that fact?  If those parties
 6   feel disadvantaged, they can go to FERC, or
 7   if they feel disadvantaged, they can come
 8   here and say, "We want the same treatment."
 9   How are they being impacted?  I don't think
10   they are being impacted at all.  They can
11   assert and protect their rights.  How are you
12   being negatively impacted by asserting your
13   rights, and Enron says, "We want to assert
14   our rights before you," that these parties
15   have every entitlement to assert before FERC.
16   I am not understanding the lack of
17   parallelism in these positions.
18              MR. GAMZA:  I guess the best I can
19   answer that, Your Honor, is that it is
20   improper for Enron to target us to terminate
21   the mediation stay for protecting our rights
22   at FERC.
23              Your Honor, Enron points to the
24   fact that we are here opposing the motion as
25   evidence that the motion will have its
```

```
 1              Proceedings

 2    intended effect, but the fact that they are

 3    here attempting to radically alter, and I

 4    would disagree with Your Honor that this is

 5    something that would categorize as just

 6    having an effect on the mediation, that would

 7    radically alter the mediation process.  The

 8    stay of litigation was one of the fundamental

 9    tenets of this Court's mediation order.  From

10    a practical standpoint, that certainly rings

11    true.  So they are here today to

12    fundamentally alter the mediation process,

13    and perhaps fatally alter the mediation

14    process.

15              JUDGE GONZALEZ:  Do you think that

16    you have altered the mediation process by

17    going before FERC?  What we are confusing

18    here, I think, in discussion is the

19    difference between someone exercising their

20    rights, and then saying, "Because I exercised

21    my rights, therefore there are no negative

22    consequences to me," and an argument that you

23    improperly exercised your rights.  I don't

24    have any question that you properly exercised

25    your rights.  That is your choice.  But to
```

```
 1              Proceedings
 2    turn and say, "Because I acted properly in
 3    protecting my rights, I therefore shouldn't
 4    in any way be criticized in the context of
 5    the mediation process and everything should
 6    hold still."  I just don't understand that.
 7              MR. GAMZA:  Your Honor, first of
 8    all, to address your first question, I don't
 9    believe that Santa Clara has undermined or
10    negatively affected the mediation process by
11    participating in the Gaming and Partnership
12    Proceeding.  I think consistent with what
13    Your Honor has said all along regarding
14    mediation, if that were the case, then we
15    assume that Judge Gropper would have
16    identified that to Your Honor as a problem
17    with the mediation.  That, to our knowledge,
18    has not happened.
19              JUDGE GONZALEZ:  This is where we
20    are going back down a path that I tried to
21    move away from.  I am not ruling considering
22    that you did something improper.  What I am
23    looking at, although I think the relief when
24    you strip apart maybe some of the adjectives
25    or take them out, the bottom line is:  by
```

| | |
|---|---|
| 1 | Proceedings |
| 2 | exercising your rights did you change the |
| 3 | balance that was in essence in the mediation? |
| 4 | If you changed the balance, it doesn't mean |
| 5 | you are wrong.  It doesn't mean that the |
| 6 | mediation should necessarily stop, but what |
| 7 | it may mean is that since it is out of |
| 8 | balance, it needs to get put back in balance. |
| 9 | That is not an indication of a termination of |
| 10 | the mediation.  I don't think it is an |
| 11 | indication of anything. |
| 12 | When that mediation began, and my |
| 13 | recollection may be faulty, but with the |
| 14 | exception I believe of Nevada Power -- I am |
| 15 | not sure how many parties were then before |
| 16 | FERC that are subject to the mediation, I |
| 17 | don't think that there were that many and |
| 18 | there may not be many -- it seems to me that |
| 19 | both sides have rights to be exercised.  One |
| 20 | side is not stayed from exercising those |
| 21 | rights, but if they voluntarily for whatever |
| 22 | reason don't exercise them, the other side is |
| 23 | stayed from exercising certain rights, |
| 24 | meaning to proceed before this Court, when |
| 25 | the side that is not stayed from doing it |

1                    Proceedings

2    decides to do it and has every right to do

3    it, I am confused as to why there is so much

4    trouble about the other side that was stayed

5    from saying, "We want to now exercise our

6    rights?"

7              MR. GAMZA:  I have a couple of

8    responses, Your Honor.  First of all, I don't

9    believe that we have disturbed the balance in

10   the mediation by participating in the Gaming

11   and Partnership Proceeding.  We are hopeful

12   that there will be relief granted in that

13   proceeding that is to the benefit of Santa

14   Clara, but no one knows what relief is going

15   to be granted, Your Honor.  The ALJ is not

16   going to rule until January of 2006.  FERC

17   won't rule until sometime thereafter.  Enron

18   was moved for reconsideration of the

19   March 11th order.  That may moot the whole

20   Gaming and Partnership Proceeding, or at

21   least Enron is concerned with the Gaming and

22   Partnership Proceeding.

23             So I don't believe that we have

24   disturbed the balance, and I think if we have

25   disturbed the balance, Your Honor, then it

```
 1                  Proceedings
 2    would be appropriate for Judge Gropper to
 3    address that issue, because this is a
 4    fundamental change in the mediation process.
 5                  JUDGE GONZALEZ:  This is a
 6    restraint I think on Judge Gropper.  Judge
 7    Gropper would respond to me if someone acted
 8    in bad faith.  I think disrupting the balance
 9    is not evidence of bad faith.  It is evidence
10    of one party exercising whatever rights they
11    have.  When I say "the balance," it may push
12    to one side an advantage that they didn't
13    have before, because they didn't exercise it.
14    Once that is done, then I don't see anything
15    particularly wrong with the other side
16    saying, "We want to do the same thing, but
17    you stayed us from doing that.  Now we want
18    relief from the stay."
19                  MR. GAMZA:  But Your Honor did
20    indicate that he would want to hear from
21    Judge Gropper before the mediation was
22    terminated.  While Enron can argue that this
23    is not a termination of the mediation, it
24    will clearly have a significant impact on the
25    mediation with Santa Clara, the other
```

1            Proceedings

2    counterparties here, and the mediation

3    process in general.  It certainly would seem

4    like an issue upon which the mediator should

5    have been consulted and heard.

6            Your Honor, on that point, I heard

7    counsel for Enron indicate that Judge Gropper

8    was advised in advance.  All that we saw was

9    a contemporaneous cover letter sending the

10   motion to Judge Gropper.

11           JUDGE GONZALEZ:  If you saw a

12   letter, that means Judge Gropper was made

13   aware of it by the movant today; and if Judge

14   Gropper looked at that and said, "This is in

15   effect a termination of the mediation

16   process," I would think Judge Gropper would

17   have walked across the hall and said

18   something to me or said something to the

19   party.  So I think I have to assume, since

20   his chambers was provided either a courtesy

21   copy or a duplicate copy, that if he had an

22   issue with it, he would have raised it to the

23   parties or raised it directly with me.

24           MR. GAMZA:  That may be, Your

25   Honor.  I simply don't know, Your Honor.

1               Proceedings

2     That is speculation and I can't comment on

3     it.

4               The fundamental problem with the

5     motion, Your Honor, is that Enron has made a

6     bunch of unsubstantiated claims as a basis

7     for radically altering the mediation process

8     that this Court has crafted and singling out

9     Santa Clara and three other counterparties,

10    protecting their rights in an ongoing

11    regulatory proceeding.  Your Honor, in our

12    view, they are the ones who are improperly

13    attempting to use the mediation process.

14    They are simply trying to create an

15    environment in which they believe they have

16    the most settlement leverage.  That is not

17    the purpose of the mediation process as we

18    understand it.  It is supposed to be a neural

19    tool, Your Honor.  It is not to be

20    manipulated by Enron in each specific case to

21    maximize what they believe is their

22    settlement leverage.

23               JUDGE GONZALEZ:  If you alter the

24    status quo that was in place when the

25    mediation order was entered, did your client

1                   Proceedings

2    remain solely pursuing their rights in the

3    context of the mediation or did they exercise

4    their rights outside of the context of the

5    mediation?

6              MR. GAMZA:  They clearly exercised

7    rights outside of the context of the

8    mediation.  With American Coal, Your Honor,

9    which you will hear next, Enron believes that

10   maximum leverage can be obtained by

11   continuing the mediation and tallying the

12   sanctity of the mediation and Judge Gropper's

13   input.  With respect to the targeted

14   counterparties with respect to Santa Clara,

15   Enron obviously believes that they can bring

16   maximum leverage by terminating the mediation

17   stay without any input from Judge Gropper.

18              Again, Your Honor, we don't believe

19   that this Court intended the mediation order

20   to be a tool for Enron to use as it believes

21   maximizes its leverage.

22              I have just a couple of additional

23   comments, Your Honor.

24              JUDGE GONZALEZ:  Go ahead.

25              MR. GAMZA:  Your Honor asked or I

1          Proceedings

2    guess indicated that the effect that

3    terminating the mediation stay would have on

4    other parties through the moving forward of

5    common issues of fact, law, and discovery

6    would be a problem not necessarily of Santa

7    Clara and the others here in the Court today,

8    but with the other parties who share in those

9    common issues of fact, law, and common

10   discovery issues.  But, Your Honor, we have

11   been in this process for over two years.  We

12   have invested a substantial amount of time,

13   energy, and money in the mediation process.

14         JUDGE GONZALEZ:  Why don't you stay

15   there?  I hate in a way to make it so simple,

16   because maybe it really isn't and I am

17   missing something.  You have every right not

18   to solely commit yourself to the mediation

19   process, and you want and exercised your

20   rights and I accept that and I understand

21   that and I am not troubled by it.  But let's

22   move on from there.

23         Now, the question is Enron is

24   arguing that it has rights that it would like

25   to exercise, and it is hard for me to listen

```
1                Proceedings
2    to you say, "We didn't do anything.  We are
3    innocent bystanders."  I think you are
4    innocent, but you are not a bystander.  You
5    did something.  You exercised your rights and
6    there is nothing wrong with it, but there are
7    consequences and this may be one of them.
8              MR. GAMZA:  I appreciate what Your
9    Honor is saying, but I guess one way of
10   looking at it is Santa Clara has a choice
11   between protecting its rights at FERC and, if
12   it doesn't, taking the risk that its rights
13   will be substantially prejudiced or becoming
14   a target for having allegedly interrupted or
15   interfered with the balance of the mediation.
16             Your Honor, I do want to respond
17   just very briefly for the record,
18   Mr. Ellenberg indicated that Santa Clara had
19   an offer since last July.  There has been
20   quite a bit of back and forth.  We had asked
21   for certain documents in order to evaluate
22   the offer.  I don't want to disclose, Your
23   Honor, anything that happened in the
24   mediation.  I believe that it is important
25   that that remain confidential, but I think
```

|     | Proceedings |
| --- | --- |
| 1   | Proceedings |
| 2   | that that is not an accurate portrayal of |
| 3   | what has happened in the mediation. |
| 4   | Thank you, Your Honor. |
| 5   | JUDGE GONZALEZ:  Thank you. |
| 6   | Who else would like to respond? |
| 7   | (Whereupon, no response was heard.) |
| 8   | JUDGE GONZALEZ:  All right, |
| 9   | Mr. Ellenberg? |
| 10  | MR. ELLENBERG:  Your Honor, |
| 11  | Mr. Gamza represents Santa Clara in the |
| 12  | mediation scheduled with them for Monday.  We |
| 13  | haven't cancelled that session.  We intend to |
| 14  | go forward with it.  Mr. Gamza representing |
| 15  | Santa Clara says that the relief we are |
| 16  | requesting will punish and will punish each |
| 17  | of these other parties.  Odd choice of words. |
| 18  | This stay litigation is non-discriminatory. |
| 19  | It stays us.  It stays them.  Removing the |
| 20  | stay would be non-discriminatory.  It will |
| 21  | free us up and it will free them up, yet he |
| 22  | views it as punishment.  Why does he view it |
| 23  | as punishment?  Why do they all view it as |
| 24  | punishment?  That very word you have heard |
| 25  | from these four parties begs a single |

```
 1              Proceedings
 2   question -- why don't they want you to grant
 3   our motion?
 4              JUDGE GONZALEZ:  Is there anything
 5   else?
 6              (Whereupon, no response was heard.)
 7              JUDGE GONZALEZ:  All right.  I do
 8   think it is proper to grant the motion.  I
 9   think that whatever the consequences of
10   granting the motion in terms of the dynamics
11   in the mediation may be, I don't think it is
12   anything improper.  I think it brings people
13   closer to the playing field that existed when
14   the mediation was commenced.  I don't think
15   anyone has acted improperly.  I think there
16   just needs to be some adjustment in the
17   context of the rights of the parties to
18   proceed in the various forums that they may
19   proceed in.
20              With respect to Judge Gropper, I
21   think and more importantly, I am quite
22   confident that we would have asked the
23   parties or directly commented to me if he
24   felt there was something inappropriate in the
25   request made, but I think one way to address
```

1                    Proceedings

2      that is before I enter any order, I will

3      speak to Judge Gropper.  Unless a party here

4      objects to that, they can be heard.  I am not

5      troubled if you object to it.  If you are to

6      object to it, I would just have the order

7      provided to Judge Gropper with the comment

8      that if he wanted to bring something to my

9      attention he could before the order were

10     entered.  Does anybody object to my speaking

11     with Judge Gropper?

12              MR. ELLENBERG:  The Debtors do not

13     object, Your Honor.

14              MR. GOLDFARB:  No objections here.

15              JUDGE GONZALEZ:  Submit the order.

16     I will discuss the procedure that went on

17     today, to the extent it addressed Judge

18     Gropper's view on the mediation and the

19     impact of the relief requested.  I am sure if

20     something changes my mind in that discussion,

21     we will let the parties know, or otherwise

22     the order will probably be entered sometime

23     tomorrow or Monday.

24              If you haven't already done so,

25     e-mail the order to my chambers and I will

1                    Proceedings

2    attempt to speak to Judge Gropper sometime

3    today, and thereafter, again, unless I change

4    my mind as a result of that conversation, the

5    order is likely to be entered tomorrow or

6    Monday.  Thank you.

7                    MR. GOLDFARB:  Your Honor, assuming

8    that the Court proceeds and lifts the stay,

9    at least form the perspective of the

10   Snohomish, some early management of the

11   process would be appropriate.  Would Your

12   Honor entertain setting up some type of a

13   meet and confer process so that we don't just

14   kind of all spiral out and start spending a

15   lot of money?  What we would like to do is

16   kind of get focused.   There are some

17   issues --

18                    JUDGE GONZALEZ:  You don't want to

19   meet and confer with me?

20                    MR. GOLDFARB:  No.  Not unless Your

21   Honor is dying to see us again.

22                    JUDGE GONZALEZ:  I think the

23   parties can get together.  I would expect

24   that the Debtor would cooperate with the

25   parties to address the issues that need to be

1             Proceedings

2    addressed in terms of discovery, et cetera.

3    If you do have problems, you can contact

4    chambers and I will get involved in a

5    telephonic conference or a conference call,

6    et cetera, or you can come before me for a

7    status conference.  I think it is obviously a

8    valid issue, but I would expect that it would

9    be addressed.

10             MR. GAMZA:  Your Honor, very

11    quickly, so I am not accused of withholding

12    information.  I did indicate to counsel for

13    Enron prior to the hearing that the mediation

14    scheduled with Santa Clara for Monday may

15    need to be moved back by several weeks.

16    There has been a personnel change and Santa

17    Clara will be thus starting June 1st, and I

18    just don't want to be accused of hiding the

19    ball.

20             MR. GRUENBERGER:  Your Honor, Peter

21    Gruenberger.  Yes, we met Mr. Gamza in the

22    hall.  We asked him whether he was going

23    forward on Monday, and that is what he said

24    in response.  Although we did meet our

25    clients in the street yesterday and spoke

```
 1                    Proceedings
 2    directly to our clients and they said they
 3    were going forward on Monday without making
 4    that revelation that it might be postponed.
 5    So I guess the latest is the greatest.
 6              MR. GAMZA:   That is correct, Your
 7    Honor.
 8              JUDGE GONZALEZ:   All right.  Those
 9    who haven't entered your appearances, please
10    do so.  I will return shortly.
11              (Whereupon, a recess was taken.)
12              JUDGE GONZALEZ:   Please be seated.
13              Go ahead.
14              MR. MULROY:   Thank you, Your
15    Honor.   Thomas Mulroy and Richard Mason on
16    behalf of American Coal.
17              This is our motion to modify your
18    mediation order.  At the outset I would like
19    to tell you that we don't want to set aside
20    this order.  We want to modify it.  So in the
21    end, we think that the mediation might become
22    successful for us.
23              Right now the parties are pretty
24    far apart.  We think, at least, on behalf of
25    my client, that mediation is a great way to
```

# NO. 2

# Minutes of Proceedings

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------------------x

Date:    <u>December 29, 2004</u>                                    :

--------------------------------------------------------------------------x

In re:                                                             :
                                                                   :
**Enron Corp., et al.,**                                           :    Case No. <u>01-16034</u> **(AJG)**
                         Debtor(s).                                :

--------------------------------------------------------------------------x

**Enron Power Marketing, Inc.,**                                   :
                                          Plaintiff                :    Adversary Proceeding No.
         v.                                                        :    <u>02-2719</u> **(AJG)**
                                                                   :
**City of Santa Clara,**                                           :
                               Defendant.                          :

--------------------------------------------------------------------------x

Present:     <u>Hon. Arthur J. Gonzalez</u>        <u>Lynda Nulty</u>        _____
             Bankruptcy Judge               Courtroom Deputy         Court Reporter


**As set forth on the record at the Hearing**

| | | | |
|---|---|---|---|
| Trustee _____ | | Counsel _____ | |
| Debtor(s) _____ | | Counsel _____ | |
| 1. Creditor _____ | | Counsel _____ | |
| 2. Creditor_____ | | Counsel _____ | |
| 3. Plaintiff/Applicant _____ | | Counsel _____ | |
| 4. Defendant/Respondent _____ | | Counsel _____ | |

**Proceedings:**     ▢ Motion for Relief from Automatic Stay Filed By _____
                     ▢ Motion to Void Lien Held By _____
                     ▢ Motion to Dismiss Filed By _____
                     ▢ Motion to Confirm/Modify Plan _____
                     ▢ Motion to Convert to Chapter _____
                     X Motion By **the Plaintiff for an order enforcing the automatic stay and the Court's Mediation**
                            **Order; enjoining the Defendant's further prosecution to the FERC Action and for civil**
                            **contempt sanctions.**
                     ▢ Complaint By _____
                     ▢ Appearances made, arguments presented_____
                     ▢ No appearances _____
                     ▢ Oral findings and conclusions made of record _____
                     ▢ Witnesses sworn          ▢ See attached list   ▢ Exhibits entered   ▢ See attached list
                     ▢ Pretrial _____        ▢ Status Conference _____
                     ▢ Other_____
                     ▢ Continued to _____ at          for _____


**Orders:**     ▢ Relief sought in complaint/motion:
                X Granted **as set forth in the attached Decision and Order (Exhibit A).**
                ▢ Denied          ▢ Dismissed          ▢ Awarded by Default
                ▢ Judgment to enter for:
                ▢ Plaintiff          ▢ Defendant          ▢ Applicant          ▢ Respondent
                ▢ In the amount of $ _____  ▢ Cost in the amount of $ _____
                ▢ Matter taken under advisement
                ▢ Formal order or Judgment to enter

◻ Confirmation/modification of plan          ◻ granted          ◻ denied
◻ Other _____

FOR THE COURT: Kathleen Farrell, Clerk of the Court


BY THE COURT:


  _s/Arthur J. Gonzalez_                    12/29/04                    Lynda Nulty_____
United States Bankruptcy Judge                Date                    Courtroom Deputy

**EXHIBIT A**

**Decision and Order Read into the Record on December 29, 2004**

Before the Court is the motion filed by Enron Power Marekting Inc. ("EPMI") seeking to enforce the automatic stay and the mediation order (the "Mediation Order") that this Court entered concerning various adversary proceedings (the Trading Cases) pending before this Court and to enjoin the City of Santa Clara (the "City") from further prosecution of the action it filed before the Federal Energy Regulatory Commission ("FERC") against EPMI (the "FERC Action") and ordering the City to withdraw the complaint filed in the FERC Action (the "FERC Complaint"), and for contempt sanctions.

On July 22, 2002, EPMI commenced an adversary proceeding against the City in this Court seeking to collect an early termination payment (the "Termination Payment") it alleged was owed based upon the terms of a Master Energy Purchase and Sale Agreement (the "Agreement") previously entered into by the parties. As such, any amount due as a Termination Payment is property belonging to EPMI's estate.

As a defense to the adversary proceeding, the City alleged that there was no default or basis for the Termination Payment under the terms of the Agreement. The City also alleged, among other things, that EPMI's entitlement to the Termination Payment violated certain standards of the Federal Power Act (the "FPA").

On November 1, 2002, the City moved before the District Court for withdrawal of the reference to the Bankruptcy Court and, on January 8, 2003, the District Court denied that request.

1

On July 2, 2004, the City filed the FERC Action seeking a ruling that it does not have to pay the Termination Payment based on the same defenses interposed before this Court.

EPMI argues that the FERC Action violates the automatic stay as it is an effort to obtain control over property of EPMI's estate. Further, EPMI argues that the FERC Action is a violation of the Mediation Order issued by this Court. EPMI requests that the Court issue an injunction against the City to enjoin it from further prosecution of the FERC Action. In addition, EPMI seeks that sanctions be imposed.

The City argues that it has not violated the automatic stay or the Mediation Order because the defenses it seeks to pursue in the FERC Action are within FERC's exclusive jurisdiction and, pursuant to 11 U.S.C. § 362(b)(4), are exempt from the automatic stay as an exercise of FERC's police and regulatory power.

FERC has exclusive jurisdiction to ensure that the rates, terms and conditions set forth in contracts affecting wholesale electric power transactions are just and reasonable. *See* Federal Power Act ("FPA"), Section 205. Any contract which affects or relates to such rates, charges, classifications, and services, must be filed with and approved by FERC. 16 U.S.C. § 824d(c),(e). Section 206 of the FPA authorizes FERC to find that the terms of a wholesale power contract are "unjust, unreasonable, unduly discriminatory or preferential," and to modify the contract to include the "just and reasonable" terms "to be *thereafter* observed and in force" (16 U.S.C. §824e(a)). (emphasis added).

The governmental unit exception provided in section 362(b)(4) of the Bankruptcy Code applies only in relation to actions enforcing "generally applicable regulatory laws" governing a debtor's conduct. *See Corporacion de Servicios Medicos Hospitalarios de Fajardo v. Mora (In re Corporacion de*

2

*Servicios Medicos Hospitalarios de Fajardo)*, 805 F.2d 440, 445 (1st Cir. 1986). The exception is narrowly construed. *Id.* at 447. Even where an action by a governmental agency is related to the agency's general regulatory power, where the action seeks to enforce a contractual right, the action remains subject to the automatic stay. *Corporacion de Servicios*, 805 F.2d at 445.

While the "police and regulatory power" exception to the automatic stay applies to issues concerning adjustments to the filed rate [FPA, Section 205] and modifications to contracts under the auspices of the agency [(16 U.S.C. §824e(a))], as well as to the enforcement of provisions promulgated by the agency, *Board of Governors of the Federal Reserve System v. MCorp Financial, Inc., et al. (In re MCorp Financial Inc., et al.*, 502 U.S. 32, 43-44, 112 S.Ct. 459, 462, 116 L.Ed.2d 358 (1991), the exception does not apply to any private state-law contractual dispute.

In instances, however, where FERC is acting in its capacity as a regulator, the fact that its enforcement action could affect the Bankruptcy Court's control over property of the estate would not stay such enforcement proceeding as it would be expressly exempted by §362(b)(4)." *Board of Governors of the Federal Reserve System v. MCorp Financial, Inc., et al. (In re MCorp Financial Inc., et al.*, 502 U.S. 32, 41, 112 S.Ct. 459, 464, 116 L.Ed.2d 358 (1991). Actions taken by FERC in its capacity as regulator are not subject to substantive review by a bankruptcy court.

Pursuant to the FPA, FERC has exclusive jurisdiction to alter the terms of the contracting parties' agreement. *NRG Power Marketing, Inc. v. Blumenthal (In re NRG Energy, Inc.)*, 2003 WL 21507685, at *3. However, FERC does not have exclusive jurisdiction over the breach of a FERC approved contract unless the challenge is *directly* to the filed rate. *Mirant Corp. v. Potomac Elec. Power Co. (In re Mirant Corp.)*, 378 F.3d 511, 519 (5th Cir. 2004). Therefore, as long as the

3

basis for the relief is not that the filed rate was excessive, a court may interpret an energy contract and

void that contract if it is determined that such "contract was obtained unconscionably or by fraud

without interfering with FERC's rulemaking power." *Mirant*, 378 F.3d at 519, *citing*, *Gulf States*

*Utils. Co. v. Ala. Power Co.*, 824 F.2d 1465, 1472 (5th Cir. 1987).

This applies even if there is an *indirect* effect on the rate such as would be the case if a rate were

eliminated, such indirect effect would not result in pre-emption by FERC. *Mirant*, 378 F.3d at 521.

EPMI's rights under the Agreement are property of the Debtor's estate and any interpretation

of issues concerning that contract are properly brought before this Court. A commercial contract

dispute does not involve FERC's police or regulatory powers and FERC could only exercise its

concurrent jurisdiction in that area if the City obtained relief of the automatic stay from this Court.

Without obtaining relief from the stay, any action taken by FERC to interpret the terms of the contract

would be void *ab initio*.

The City argues that its defenses to the adversary proceeding which were also presented in the

FERC Action are related to the FPA and that only FERC, as the regulatory agency, can resolve those

issues. The City contends that it did not violate the automatic stay or the Mediation Order by seeking

resolution of those defenses before FERC as it is not a violation of the automatic stay to assert

defenses. The City argues it was justified in asserting its defenses before FERC because FERC has

exclusive jurisdiction over the issues presented and those issues must be resolved prior to the contract

interpretation.

EPMI argues that by means of the FERC Action, the City is attempting to bring matters before

FERC that are not within FERC's police and regulatory authority as they only concern purely state-law

4

contract interpretation issues. EPMI, however, concedes that two issues presented by the City are within FERC's exclusive jurisdiction. The first concerns the notice of termination provision under regulations promulgated by FERC. The other concerns whether the market-based rates charged were fair. With respect to the latter issue, the City argues that EPMI should have its market-based rate authority revoked retroactively and EPMI should not be able to take advantage of market-based rates and that the rates are not just and proper. Nevertheless, EPMI argues that this Court should enjoin the City from prosecuting any aspect of the FERC Action as the arguments related to the alleged unreasonable rates charged and to the revocation of market-based authority are redundant of arguments currently before FERC in another proceeding - the "gaming and partnership" proceeding - involving the same parties. Moreover, with respect to the notice issue that is not currently pending before FERC, EPMI argues that because of the City's failure to seek and secure relief from the automatic stay prior to commencing the FERC Action, it should be required to refile a complaint concerning any issues raised in the FERC Action.

In the FERC Action, the City seeks a determination that EPMI is not entitled to the claimed Termination Payment based on its alleged improper attempt to cancel the Agreement with the City. The City also seeks a determination that EPMI's cancellation of the two long-term confirmations with the City is void, and that the City's attempt to obtain the Termination Payment is a nullity because of EPMI's failure to provide notice to and obtain approval from FERC. Alternatively, the City seeks a determination that if EPMI is entitled to a Termination Payment by the terms of the Agreement, that FERC require EPMI to calculate the charge on a cost of service basis, and/or revoke EPMI's market-based rate authority effective at least as of January 2000. Finally, the City seeks any alternative and

additional relief deemed appropriate by FERC.

The Court agrees with EPMI's assessment that the vast majority of the issues raised in the FERC Action concern state-law contract interpretation issues that are within this Court's jurisdiction. The majority of the defenses raised before FERC flow from the obligations under the Agreement.

The adversary proceeding before this Court concerns the commercial dispute between the parties on the issues of failure to make a margin call, suspension of performance and failure to pay for power. The issue of whether or not there was a default under the Agreement is an issue of contract interpretation - as are the issues of whether there was a basis for a termination payment, whether there is a good faith dispute concerning entitlement to the Termination Payment and whether performance assurance was required by the terms of the Agreement.

All of these issues are raised in the FERC Complaint. Recognizing that FERC is charged with the role of ensuring that the rates, terms and conditions set forth in contracts affecting wholesale electric power transactions are "just and reasonable" and of modifying, for future application, any contracts that contain "unjust and unreasonable terms," the City has attempted to transform its ordinary contract interpretation issues into issues within the framework of FERC's exclusive jurisdiction by repeatedly using the terms "unjust and unreasonable" in describing the allegations. Nevertheless, the majority of the issues presented in the FERC Complaint are pure state-law contract interpretation issues.

In the FERC Complaint, the City seeks a determination of the enforceability of EPMI's declaring a default and recovering a Termination Payment under the terms of the Agreement and confirmations [¶¶ 78, 103, 104, 105]. The City also seeks a determination

- that, under the terms of the Agreement and the confirmations, there was an improper

6

cancellation of the contract [¶ 82, 101];
- that, under the terms of the Agreement, EPMI actually owed the City money on a net basis at the time of the termination [¶¶ 84 through 90].
- that the termination was not made in good faith and as such was not permitted under the terms of the Agreement or the confirmations [¶ 82].
- that it is not obligated for amounts owed that it claims were not assessed pursuant to the terms of the Agreement and confirmations. [¶80].

Further, in the FERC Complaint, the City details certain provisions of the Agreement concerning the early termination of the Agreement, events of default, and netting and setoff. These all concern contract interpretation issues that are properly before this Court and absent relief from stay are not to be pursued before FERC.

The City argues that because EPMI's entitlement to the Termination Payment was disputed by the City, only FERC may make the preliminary determination of the bona fides of such dispute. According to the City, this is because any attempt to terminate a contract subject to a good faith dispute is a modification of the contract and, therefore, within FERC's exclusive jurisdiction. The City argues that if FERC concludes that there is a good faith dispute as to whether there was a default under the terms of the contract, then FERC determines if the termination was proper.

The Court disagrees and finds that the issue of the existence of a good faith dispute is relevant to the contract interpretation issue within this Court's competence to determine.

The City makes an additional attempt to frame the issues presented as within FERC's exclusive jurisdiction to modify an energy contract or to set just and reasonable rates and terms. In this effort, the City first argues that there was no default under the Agreement and that the cancellation of the Agreement was improper under the terms of the Agreement. The City argues that, consequently, EPMI's efforts to enforce an entitlement to the Termination Payment or cancel the Agreement is a

7

unilateral modification of the contract or an attempt to enforce unjust and unreasonable terms and practices.

However, whether EPMI is entitled to the Termination Payment under the terms of the Agreement and the confirmations and whether it properly cancelled the Agreement is precisely the issue to be determined by this Court. As previously noted, it is within this Court's competence to interpret the terms of the Agreement and the confirmations.

The City further argues - and EPMI concedes - that the issue of whether EPMI violated the FPA and its regulations when it sought to terminate the Agreement without providing the notice and FERC approval that the City alleges was required is an issue within FERC's exclusive jurisdiction. The City contends that resolving the dispute concerning the notice requirement is a prerequisite to interpretation of the Agreement. Thus, the City argues that this Court should stay the pending adversary proceeding awaiting the resolution before FERC of the notice issue. However, prosecution of the notice issue before FERC is similar to prosecution of the issue concerning retroactive revocation of market-based rate authority or similar to any proceeding to alter a fixed rate under the filed rate doctrine. In each case, the Court would proceed with its contract interpretation and any ruling by FERC concluding that the rate or practice was unjust or unreasonable that would impact the Court's decision would be incorporated into the Court's interpretation at whatever stage was reached when FERC issued its ruling. The Court, however, would not be required to stay its proceeding awaiting any such ruling. Moreover, the Court would not be interfering with FERC's authority to determine whether termination of the contract was in violation of the FPA or whether any such violation rendered the charge or practice unjust and unreasonable.

8

Based upon the foregoing, the Court finds that the filing and prosecution of the FERC Complaint, except with regard to those portions based upon its allegation that EPMI's cancellation of the Agreement is void for failure to provide notice in compliance with Section 205(d) of the FPA as contained in ¶¶ 121 through 140 ("Notice Issues") and the issues concerning the fairness of the market-based rates charged and the retroactive revocation of EPMI's market-based rate authority as contained in ¶¶ 141 through 161 ("Market-Based Rate Authority Issues") violated the automatic stay in that the filing and prosecution of those aspects of the FERC Complaint other than the Notice Issues and the Market-Based Rate Authority Issues are not within FERC's exclusive jurisdiction and may not be pursued absent relief from the automatic stay.  As to those excepted portions referenced above, the City may continue to prosecute those issues.  It is for FERC to determine whether it finds the Market-Based Rate Authority Issues redundant with those raised in the "gaming and partnership" docket and whether it would seek to consolidate it with that proceeding.  This Court, however, cannot preclude the City from pursuing an issue before FERC within FERC's police and regulatory power.  However, this Court does have authority to enjoin the City from violating the automatic stay.  Thus, other than the two specific issues that the Court has carved out, the City is enjoined from further prosecuting the balance of the FERC Action which comprises the major part of the FERC Complaint and the City is to withdraw those portions of the FERC Complaint.  The Court reserves on the issue of sanctions for the City's violation of the automatic stay and the issue of whether the Mediation Order was violated and, if so, any awarding of sanctions therefrom until the conclusion of the Court ordered mediation.

Therefore, based upon the foregoing, it is

ORDERED, that the City is enjoined from prosecuting the FERC Action with respect to any

9

portion of the FERC Complaint, except the prosecution of the Notice Issues under Section 205(d) of the FPA as contained in ¶¶ 121 through 140 and the Market-Based Rate Authority Issues regarding the fairness of the market-based rates charged and the retroactive revocation of in ¶¶ 141 through 161 of the FERC Complaint; and it is further

ORDERED, that the City is directed to withdraw all portions of the FERC Complaint, except those portions regarding the Notice Issues and the Market-Based Rate Authority Issues as set forth above within ten(10) days of the entry of this decision and order; and it is further

ORDERED, that the Court's ruling regarding the issue of sanctions against the City for violating the automatic stay and whether the Mediation Order was violated and, if so, any awarding of sanctions therefrom until the conclusion of the Court ordered mediation; and it is further

ORDERED, that to the extent any of the enumerated paragraphs regarding the Notice Issues or the Market-Based Rate Authority Issues seek relief beyond the scope of such issues, further relief may be sought from the Court to enjoin the prosecution thereof.

The Court will enter a Minute Order reflecting this Decision and Order.